Kinkade, J.
 

 Mabel Faulk, hereinafter referred to as Faulk, brought an action against the Youngstown & Suburban Railway Company, hereinafter referred to as the company, to recover damages alleged to have been sustained by reason of personal injuries to Faulk, caused by the negligence of the company. The trial in the court of common pleas resulted in a judgment in favor of Faulk for $6,000. This judgment was affirmed by the Court of Ap
 
 *573
 
 peals, and the company now prosecutes error in this court.
 

 The injury occurred July 27, 1922, at about half past 11 o’clock at night, at Kelly’s Park stop, a flag station on the interurban railway operated by the company, about one mile east of Leetonia, Ohio, and near the northeast corner of ‘Kelly’s Amusement Park. The interurban car that inflicted the injury upon Paulk was the last car going in that direction that night. Many of the people who visited this amusement park rode upon the interurban cars of the company, boarding and leaving the cars at this flag station. The last ear at night was usually filled with passengers on leaving this station, as stated, and there was a good deal of crowding on the part of the people waiting there in order to get on the car as quickly as possible so as to secure seats. Paulk, with a companion, went to the station a little before the time of the arrival of the car. While waiting for the car, they stepped across the track from the loading side in order to make use of a seat which was near to the track on the other side. They remained by this seat until they heard the whistle of the interurban car as it approached the station, then Paulk recrossed the track in order to be in position to board the car as soon as it arrived. Prior to the time that Paulk recrossed the track, as stated, a large number of people who desired to take that car had assembled upon the loading side of the track at the point where the car was expected to stop. This crowd of people were facing the track, and the front line of the crowd was as near the track as they deemed it safe to be, in order
 
 *574
 
 that they might avail themselves of the first opportunity to board the car as it stopped. Faulk recrossed the track immediately in front of this assembly of people, and turned facing the track, and then undertook to push herself back into the crowd so as to be a safe distance from the approaching car. The headlight on the car was burning, and the car was lighted inside. Faulk not only heard the station whistle given by the motorman, as stated, but also plainly saw the headlight on the lighted car approaching. Faulk’s own testimony fixed the number of people assembled there at about 50. She testified that there was a good deal of crowding forward as the car approached, and that very naturally the crowd shoved her farther in toward the track. But she testified that, notwithstanding this, she thought she was in a safe place. The fact is that some part of the car, probably the handle near the side of the front door in the side of the car, struck Faulk and inflicted the injury of which she complains.
 

 There is no evidence in the record that anybody else in that assembly of people was hit by any part of the car. The evidence is that the car stopped at its usual stopping place. It did not run past the usual stop and then back up to the place where the people were assembled, nor did the people find it necessary to follow the car and board it at another point than where they were standing.
 

 Faulk averred in her petition that her injuries “were directly caused by the carelessness and negligence of the defendant in the following par
 
 *575
 
 ticulars: That the defendant and its servants,, agents, and employees, in charge of and running and operating said passenger car at said time and place, as it approached said Kelly’s Park stop, carelessly and negligently failed to strike a gong on said car or to give any warning whatever of the approach of said car, and carelessly and negligently failed to keep a vigilant watch for pedestrians and prospective passengers, either on or near or moving towards the track over which said car was being then and there operated, when they knew, or by the exercise of ordinary care could and would have known, that pedestrians and prospective passengers were likely to be, and were either on or near or moving towards the railway tracks over and along which said passenger car was being run and operated, and within the zone of danger, and that, by keeping a vigilant watch for pedestrians and prospective passengers at or near said stop, either on or near or moving towards the railway track over and along which said passenger car was being run and operated, said servants, agents, and employees of the defendant, in charge of and running and operating said car, could and would have seen the plaintiff as she approached and stood close to said railway track, in a position of danger and place of peril ahead of said car, in ample time and when said passenger car was far enough away from the plaintiff, in the exercise of ordinary care and with the means and appliances at hand, stopped said passenger car, and thus have prevented it from running upon, against, and striking and injuring the plaintiff, there being nothing to obstruct the view of .said servants,
 
 *576
 
 agents, or employees for a long way back from where said car ran upon, against, and struck the plaintiff; and finally that the defendant and its servants, agents, and employees carelessly and negligently failed to stop said car in the shortest time and space possible, when and after the said servants, agents, and employees of the defendant first saw, or by the exercise of ordinary care could and would have seen the plaintiff in her position of danger and place of peril ahead of said car.”
 

 It will be noted that no claim is made of excessive speed on the part of the interurban car. The fact that the car stopped at the usual place of stopping, which is clearly shown by the evidence, establishes the further fact that, when it was near to where Faulk was standing, it must have been traveling at a very slow rate of speed; otherwise it could not have stopped where it did.
 

 In view of the fact that Faulk heard the motorman’s whistle for the station stop, and saw the lighted car and the headlight on the front of the car as it approached, and says she was looking directly at the car, it is quite evident that no additional signals could have given her any more information than she already had about the coming car. There is no evidence in the record that the motorman was not giving attention ahead and doing all things that were necessary to be done in order to stop the car at the proper place; and there is no evidence in the record to sustain the charge that the plaintiff was crowded into a dangerous position by the people back of her, at a time when the car was far enough away so that
 
 *577
 
 the motorman might have stopped the car before reaching her. Plaintiff testified that she thought she was in a safe place. The crowd had already taken their position before the arrival of the car, and the people in the front line of the crowd could not advantage their position any by crowding forward beyond the safety line prior to arrival of the car. They were in front of the others as they were, and it is clearly shown by the testimony of the plaintiff herself that the crowding began as the car was immediately approaching the place to stop.
 

 There is no evidence in the record tending to show negligence on the part of the servants of the company in the management of the car at the time of this injury. The car came to the station in the usual way, and stopped at the usual place. It appears that, just before the front of the ear reached the point at which Faulk was standing, the people assembled there crowded her near enough to the line of the car to be hit by the handhold on the car, which was near the front door. We think the case may be easily disposed of on the testimony of Faulk herself. The accident is most unfortunate, but it'is evidently attributable to the crowding forward of the people assembled there in an effort to get aboard the car.
 

 At the close of the evidence offered by plaintiff, a motion was made by the company to direct a verdict in its favor. This motion was overruled, and exceptions saved, but, according to the record, the motion was not renewed at the close of all the evidence. As shown in the record, at the
 
 *578
 
 close of all the evidence, counsel for the company made this statement to the court:
 

 ■ “I wish to have excluded from the consideration of this jury any reference to this loading platform, as there is no allegation in this petition as to its defectiveness whatsoever, or any allegation in this proof.”
 

 The following appears in the record:
 

 “Mr. Kennedy: Defendant excepts to the ruling of the court in overruling the motion of the defendant made at the close of all the evidence.”
 

 But there is nothing in the record showing that any motion was made at the close of all the evidence to withdraw the case from the consideration of the jury and direct a verdict for the defendant.
 

 This court decided, in the case of
 
 Cincinnati Traction Co.
 
 v.
 
 Durack, Adm’x.,
 
 78 Ohio St., 243, 85 N. E., 38, 14 Ann. Cas., 218:
 

 “Where, on the trial of a civil action, the defendant, at the close of plaintiff’s evidence, moves for a verdict thereon in his favor, and, on excepting to the decision of the court overruling said motion, introduces evidence to support his grounds of defense, and rests without renewing the motion at the close of all the evidence, the exception is deemed to be waived, and it is no longer a predicate for error in a reviewing court.”
 

 This decision was followed in
 
 City of Zanesville
 
 v.
 
 Stotts,
 
 88 Ohio St., 557, 106 N. E., 1051, and
 
 Nead
 
 v.
 
 Hershman,
 
 103 Ohio St., 12, 132 N. E., 19, 18 A. L. R., 1419.
 

 There being no evidence in the case tending to establish negligence on the part of the defendant,
 
 *579
 
 manifestly the verdict and judgment in the trial court were contrary to law, and defendant’s motion for a new trial should have been granted on that ground.
 

 Judgments of the court of common pleas and Court of Appeals are reversed, and cause remanded for further proceedings according to law.
 

 Judgments reversed.
 

 Marshall, C. J., Jones, Matthias, Day, Allen and Robinson, JJ., concur.