Kinkade, J.
 

 This case has been twice tried. The defendant in error, Mabel Faulk, secured a verdict and judgment in her favor in the first trial, which was affirmed by the Court of Appeals, but reversed by this court. That case is reported in 114 Ohio St., 572, 151 N. E., 747. The facts are reviewed in the opinion. No useful purpose could be served by a restatement in full detail of the facts here. If the motion for a directed verdict for the defendant, made at the close of the plaintiff’s evidence in the first trial, had been renewed at the close of all the evidence, and overruled, this .court would probably have not only reversed that judgment, but would have then entered here the judgment that, should have been entered by the trial court; that is to say, a final judgment in favor of the interurban company.
 

 When the case was remanded for new trial by this court, the defendant in error procured leave of court to file an amended petition. The granting of this leave was objected to by the interurban company, and exceptions saved, and that action of the trial court is now assigned by plaintiff in error as one of the errors of the trial court at the second trial which calls for a reversal of the present judgment. It is claimed that by the filing of the amended petition the plaintiff below was permitted to abandon the case made in the original petition and substitute therefor a wholly different case. We are unable to see substantial merit in this claim. The trial court was clearly within its right, under the statutes relating to
 
 *482
 
 amendments of pleadings, in permitting this amended petition to be filed. The substance of the amended petition was to add a few additional grounds of negligence on the part of the interurban company, but, in view of the conclusion we have reached, this alteration of the pleadings becomes immaterial. Even if it be conceded that evidence was introduced by the plaintiff in the second trial tending to sustain these additional alleged grounds of negligence on the part of the interurban company, and also tending to sustain the grounds mentioned in the original petition, and carried into the amended petition as well, it would still be impossible to sustain the right of thé defendant in error to recover in this case.
 

 Briefly stated, the accident to the defendant in error happened near the midnight hour, while she was standing at a station on the line of the interurban company, waiting to board an in-coming interurban car — the last car going in that direction that night. There were between 30 and 50 other persons also Waiting at that station to board that car. The car was traveling in a northerly direction. The station in question was at the intersection of a public highway by the interurban tracks. All passengers got aboard the car from the west side of the track. A space of ground for the use of persons boarding the cars had been covered with cinders or slag, so that it would not become muddy in- wet weather. This space was about 25 feet long, running southerly from the highway line, and was level with the interurban tracks. It was from 8 to 10 feet wide at the northerly end, and diminished gradually in width to the south. The defendant in error reached the sta
 
 *483
 
 tion a little in advance of the time when the car was dne to arrive. In company with one or two others, she crossed the interurban tracks and waited on the east side of the track until the motorman of the car gave a whistle signal of its approach to the station. The defendant in error heard the signal when the car was some distance from the station. She then recrossed the interurban tracks to the west side, in order to board the car when it should stop at the station. When she thus crossed hack to the west side of the track, the car was near to the station, and the headlight of the car was plainly visible, and was seen by the defendant in error. She had all the information possible that any one could have that the car was coming. The others who were waiting to hoard the car the same as the defendant in error had already taken their positions when the defendant in error recrossed to the west side of the track. These persons were then standing in three rows of about fifteen persons each. The first row nearest to the track had the best position for boarding the car'in advance of others when the car arrived, the second line immediately hack of the first the next best position, and the third line immediately hack of that the third best position. As the defendant in error recrossed the tracks, she came face to face with the first line standing nearest the track. She could have taken a position at either end of this line, or of either of the other lines. She elected to stand in front of the front line, as she desired to secure the best position available for a quick entrance into the car when it arrived. The people in these rows were standing close together, side by side. Manifestly the defendant in error could not take a posi
 
 *484
 
 tion
 
 in
 
 the first row except somebody in that row gave way and permitted her to do so. This did not occur. She selected her own point of standing between the termini of this front row. As the car came close to the place where it usually stopped, there was a surging forward of all three rows, the defendant in error standing with her back to the first row and endeavoring to stand clear of the car, as all the persons in the front row were endeavoring to do. When the car came in, it stopped almost exactly at its usual stopping place, and, if there was any variation therefrom, it ran only 4 or 5 feet farther to the north than it usually did. A grab handle on the left front door to the baggage compartment of the car struck the defendant in error as the car passed the point at which she was standing and threw her to the ground. She did not fall against anybody in the front line, but fell in front of the persons in the front line standing immediately north of where she was standing. One other witness testified that the car in passing came very close to her, but did not strike her. The only person hit was the defendant in error.
 

 All of the witnesses called by the defendant in error who were at that place at that time, and in the front row next to the car track, testified that they thought they were in a safe place. The defendant in error testified likewise that she thought she was in a safe place. The motorman of the car testified that, as he saw the passengers standing waiting for the car, he saw nothing to indicate that any of them were within the line of the overhang of the car. The physical fact remains, in spite of this testimony, that the defendant in error was within the line of the
 
 *485
 
 overhang of the car when the front of the car reached the point where she was standing; and it was this fact, and only this fact, that caused her injury. There was no defect in the track, no defect in the car, no more overhang of the car than cars usually have when on the kind of a curve that that car was then travelling, and the collision of the car with the person of the defendant in error was occasioned solely by her being within, the line of the overhang of the car, and her position there was due either to voluntary action on her own part, or to voluntarily taking the position she did and then being crowded further than she should have been by those standing back of her in the first row, waiting to take the car.
 

 The defendant in error testified very fully, not only in the first trial, but in the second trial, concerning the position she had taken in order to board the car, and what took place thereafter with respect to the crowding forward of those standing immediately back of her. A careful reading of the defendant in error’s own testimony clearly and unmistakably discloses the facts here related. Giving the testimony of the defendant in error herself the most favorable construction that can be placed upon it in her behalf, and giving her the benefit of all inferences that can fairly be drawn favorable to her from her own evidence and the evidence of others who testified in her support, the conclusion is still inevitable that the defendant in error herself was guilty of negligence directly and proximately contributing to the production of the injury of which she complains. It is not claimed that there was any negligence on the part of the intérurban company that was willful and wanton and of such character as
 
 *486
 
 would relieve against contributory negligence on the part of the injured party. There is nothing in the record that- tends to sustain any such claim, and it follows from what has been said that, even though it be conceded that the evidence in the record tended to support the claim of the defendant in error that the interurban company was negligent in the respects alleged, still the situation is not one that will sustain a verdict for the defendant in error, plaintiff below.
 

 It was the plain duty of the defendant in error and of all other persons there who desired to get aboard the car to stay outside of the line of the approaching car until the car came to a full stop. The failure to observe this duty was necessarily attended by great danger — a fact plainly self-evident to any adult person.
 

 The full record as it now stands has again been read and carefully considered in every respect. It was the duty of the trial court, at the close of the second trial, to direct the jury to return a verdict in favor of the defendant, and, for the error in not so doing, this judgment must be reversed. And this court, proceeding now to enter the judgment which should have been entered in the trial court, will here enter final judgment in favor of the interurban company.
 

 Judgment reversed and final judgment for plaintiff in error.
 

 Marshall, C. J., Robinson, Jones and Matthias, JJ., concur.