Day, J.
 

 The sole question presented by this record is whether or not the case should have been submitted to the jury.
 

 It is well established that if a plaintiff has produced “some evidence upon every element essential to create liability, or * * * evidence of a fact upon which a reasonable inference may he predicated to support such element,” such case should be submitted to the jury.
 
 Sobolovitz
 
 v.
 
 Lubric Oil Co.,
 
 107 Ohio St., 204, 140 N. E., 634. Many cases might he cited in support of this well-known rule.
 

 Measured by this standard, we think there was at least some evidence in the record from which it could he reasonably inferred that the injury received by
 
 *422
 
 Schick in the course of his employment contributed in some degree to his death.
 

 Schick was sixty-four years of age. Prior to the injury his health was excellent; he never had had any fainting spells before that time; was able to work steadily and continuously, and was able-bodied and apparently healthy. As a result of the impacted fracture of his right hip he was in the hospital for seven weeks, suffering such severe pain that nárcoties were administered on several occasions. On two occasions he fainted in the hospital ward as a result of pain. Upon his discharge from the hospital, he was six weeks in bed at his home, then able to get about by the use of crutches, then with a crutch and cane, and finally with a cane. He frequently complained during this period about the pain in his injured leg; he was unable to sleep at night, and had partially lost the use of the leg. At his home he had further fainting spells. Upon one occasion, while at dinner, engaged in eating his meal, he suddenly fainted. Upon another occasion he had to be helped into his house from the yard. It might reasonably be inferred that these fainting spells were manifestations of heart disturbance, reasonably traceable to the experiences he had undergone, occasioned by his injury, as evidenced by the history, of his case.
 

 His daughter, Hilda Gerbracht, in response to the question, “How did he get around?” answered: “Very feeble. I saw him two weeks before his death and I saw a terrible change in him. ’ ’
 

 Dr. Berkley testified:
 

 “Q. What was the cause of this man’s death? A. Acute dilation of the heart was my diagnosis. ’ ’
 

 “Q. I will ask you whether or not in your opinion his previous injury that confined him to the hospital and his home had any bearing or contributed in any way to this man’s death? A. In my opinion, it was possibly an indirect cause, contributing cause.”
 

 
 *423
 
 “Q. Can you explain in just what maimer you think it contributed to his death? A. To what extent it was a contributing factor I cannot say but my opinion is based on the fact that he had been more or less active. Then he had been confined for possibly two months without any exercise and getting up and moving around, then the work he was doing that morning was a little bit strenuous, causing acute dilation. ’ ’
 

 Without going into the evidence in detail, we think this case comes within the doctrine announced in the opinion in the case of
 
 Jacob Laub Baking Co.
 
 v.
 
 Middleton,
 
 118 Ohio St., 106, 116, 160 N. E., 632: “If, on the other hand, the proof and inferences are such that fair-minded men could reasonably arrive at different conclusions therefrom, the facts in issue are triable to the jury.”
 

 That the matter should have been submitted to the jury was the conclusion of the Court of Appeals, and we are of opinion that such judgment was correct, and it is therefore affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Jones, Matthias, Allen, Kinkade and Stephenson, JJ., concur.