Hart, J.
 

 Substantially, the sole controversy in this-case relates to the question whether the person who-operated the crane causing plaintiff’s injury was at the time acting as .an employee of the defendant and had authority to perform such operation.
 

 The testimony offered by the plaintiff in chief showed that some person without notice to the plaintiff, undertook to operate and did operate the crane from its position at the end to a point near the center of the
 
 *142
 
 building where the wheels or truck of the crane came in contact with the plaintiff while he was at work near the crane track on one of the sidewalls of the building. This crane operator was not identified either as to name or as to his employer. No testimony was offered as to his authority to move or operate the crane. At the close of plaintiff’s testimony the defendant moved for a dismissal of the action and also for a directed verdict in favor of the defendant. Both motions were overruled.
 

 Of course, to establish a cause of action, it was essential for the plaintiff to show that the operator of the crane was an employee of the defendant and had authority to operate it at the time of the accident.
 
 Lima Ry. Co.
 
 v.
 
 Little,
 
 67 Ohio St., 91, 65 N. E., 861;
 
 White Oak Coal Co.
 
 v.
 
 Rivoux, Admx.,
 
 88 Ohio St., 18, 102 N. E., 302. The burden to produce such proof by a preponderance of the evidence was upon the plaintiff.
 

 Does the fact that the crane was located on the premises of the defendant and was there being operated, give rise to an inference that the operator was an employee of the defendant and had authority to so operate it?
 

 The general rule is that the law raises no presumption of agency. It is a matter to be proved. 2 American Jurisprudence, 349, Section 442. Some courts, however, hold that proof of ownership of an instrumentality, such as the crane in this case, is sufficient to establish a
 
 prima facie
 
 case that a person operating pt is in the owner’s employ for that purpose, and as such is, at a- specific time, acting within the scope of his authority.
 

 This court, however, is committed to the proposition that proof of ownership alone is not sufficient to raise such an inference of fact. To raise such an inference, it must be shown, in addition to such owner
 
 *143
 
 ship, not only that the operator is an employee of the owner but that he is employed generally in the business of his employer to operate such instrumentality.
 
 White Oak Coat Co.
 
 v.
 
 Rivoux, Admx.,
 
 supra;
 
 Lima Ry Co.
 
 v.
 
 Little, supra; Sobolovitz
 
 v.
 
 Lubric Oil Co.,
 
 107 Ohio St., 204, 140 N. E., 634;
 
 Braun
 
 v.
 
 Averdick,
 
 113 Ohio St., 613, 150 N. E., 41;
 
 Lashure
 
 v.
 
 East Ohio Gas Co.,
 
 119 Ohio St., 9, 162 N. E., 41;
 
 Tice
 
 v.
 
 Crowder,
 
 119 Kan., 494, 240 P., 964, 42 A. L. R., 893, and annotation. See, also,
 
 Judson
 
 v.
 
 Bee Hive Auto Service Co.,
 
 136 Ore., 1, 297 P., 1050, 74 A. L. R., 944, and annotation;
 
 Miller
 
 v.
 
 Service & Sales, Inc.,
 
 149 Ore., 11, 38 P. (2d), 995, 96 A. L. R., 628, and annotation; 26 Ohio Jurisprudence, 679 and 680, Sections 674 and 676.
 

 This rule has been adhered to by the Courts of Appeals of this state in a long series of decisions.
 
 Rosenberg, a Minor,
 
 v.
 
 Reynolds,
 
 11 Ohio App., 66, 70, 72;
 
 Rad, Jr.,
 
 v.
 
 Gamble,
 
 13 Ohio App., 488, 490;
 
 Schmidt & Schmidt, Partners,
 
 v.
 
 Schwab,
 
 17 Ohio App., 127, 128;
 
 Holmes
 
 v.
 
 Yellow Taxicab Co.,
 
 28 Ohio App., 382, 385, 386, 162 N. E., 710;
 
 Goodyear Tire & Rubber Co.
 
 v.
 
 Marhofer,
 
 38 Ohio App., 143, 147, 176 N. E., 120. See, also,
 
 House
 
 v.
 
 Stark Iron & Metal Co.
 
 (Ohio App.), 34 N. E. (2d), 592.
 

 In support of this rule, Judge Newman, in the course of his opinion in the case of
 
 White Oak Coal Co. v. Rivoux, Admx., supra,
 
 decided by a unanimous court, said:
 

 “There are some authorities which go to the extent of holding that where the plaintiff has suffered injury from the negligent management of a vehicle, it is sufficient
 
 prima facie
 
 evidence that the negligence is imputable to defendant, when it is shown that he is the owner of the vehicle, without even proving affirmatively that the person in charge is the defendant’s servant. * *
 

 “But this court is not in accord with the authorities
 
 *144
 
 ■which hold that a
 
 prima facie
 
 case of negligence is .made against a defendant upon the mere showing that he was the owner of the negligently operated automobile. Such a rule would be unjust and would work hardships. An automobile may be in the possession of one who wrongfully appropriates it to his own use, yet, under that doctrine, if such person negligently operates it to the injury of a third person, a
 
 prima ¡facie
 
 case of negligence would be imputed to the owner. .Nor do we think that proof of the additional fact that .the operator was an employee of the owner raises a presumption of negligence against him, unless it appears that the duties of the employee are in connection with the automobile or that he was operating the same >with the authority — express or implied — of the owner.”
 

 In the case of
 
 Sobolovitz
 
 w.
 
 Lubric Oil Co., supra,
 
 .the plaintiff sought a recovery from the defendant by •showing only that the truck which injured him bore •the name of the defendant company, without any identification of the operator of the truck or his relationship, if any, to the defendant. Judge Robinson, delivering the opinion in that case, said:
 

 “In the instant case the jury, in the absence of proof to the contrary, were justified in inferring the ownership of the truck by reason of the name of the •defendant being upon it. But upon that inference it •could not base an inference that the truck was being •operated by a servant of the defendant, or that it was being operated in furtherance of the business of the •defendant.
 

 “This court would be loath to lay down a rule which •would relieve the plaintiff of the burden of proving the essential facts necessary to create liability and impose upon the defendant in the first instance the burden of proving the non-existence of such facts. But, on the contrary, the majority of this court adhere to the rule that before the defendant is put upon his
 
 *145
 
 defense the plaintiff must produce some proof of every fact necessary to create a liability, or some proof of a fact from which a reasonable inference may be deduced which tends to create a liability, and that an inference cannot be predicated upon an inference. To sustain the verdict in this case would require the enunciation of a rule creating liability upon the part of the master, upon proof of a fact from which the master’s ownership of the truck causing the injury might be inferred, without any proof of the relationship between the operator and the master, and without any proof of the nature of the enterprise in which the operator of the truck was engaged, and would place upon the defendant the burden of proving the nonexistence of the relationship of master and servant, and that the truck was not being operated in behalf of the owner.”
 

 When such essential facts as indicated in the last two above-cited cases are shown, an inference arises that in operating the instrumentality at any specific time, the operator is acting within the scope of his authority, and this stands as an item of evidence, subject to be counterbalanced or overthrown by other competent evidence.
 
 Klunk
 
 v.
 
 Hocking Valley Ry. Co.,
 
 74 Ohio St., 125, 77 N. E., 752;
 
 Cleveland-Akron Bag Co.
 
 v.
 
 Jaite, an Infant,
 
 112 Ohio St., 506, 148 N. E., 82;
 
 State Automobile Mutual Ins. Assn.
 
 v.
 
 Lind,
 
 122 Ohio St., 500, 172 N. E., 361;
 
 Industrial Commission
 
 v.
 
 Schick,
 
 125 Ohio St., 419, 181 N. E., 892. No such inference, however, can arise until it is first shown that the person operating the instrumentality is in fact employed by the owner for that purpose. To hold otherwise would be to base one inference upon another, which is not permitted.
 
 Sobolovits
 
 v.
 
 Lubric Oil Co., supra; St. Marys Gas Co.
 
 v.
 
 Brodbeck, Admr.,
 
 114 Ohio St., 423, 151 N. E., 323;
 
 Thomas
 
 v.
 
 Black,
 
 118 Ohio
 
 *146
 
 St., 412, 161 N. E., 208; 39 Ohio Jurisprudence, 814, 816 and 846, Sections 190, 191 and 206.
 

 In plaintiff’s case in chief there was no evidence .that the operator of the crane, at the time of plaintiff's injury, was an employee of the defendant or that lie was engaged in the defendant’s business. Under .such circumstances the motion of the defendant to direct a verdict in its favor, made at the close of plaintiff’s case, should have been sustained.
 

 The next question which naturally arises is whether the error of the court in overruling defendant’s motion, as above noted, was still available to the defendant. It did not rest its case at that point but chose to go forward and did go forward with its defense. Where a motion of a defendant for a directed verdict made at the conclusion of plaintiff’s evidence is overruled, the defendant has an election either to stand on his exception to the ruling or to proceed with his defense; and if he accepts the ruling, however erroneous it may be, and proceeds with his defense, introducing evidence on his own behalf, he thereby waives his right'to rely on his original motion.
 
 City of Zanesville
 
 v.
 
 Stotts,
 
 88 Ohio St., 557, 106 N. E., 1051;
 
 Youngstown & Suburban Ry. Co.
 
 v.
 
 Faulk,
 
 114 Ohio St., 572, 578, 151 N. E., 747. On the other hand, if a defendant renews his motion to direct a verdict at the close of all the evidence, he challenges not the sufficiency of the evidence that was alone before -the court and jury at the time the original motion was made, but the evidence and the state of the record as it exists at the conclusion of all the evidence.
 
 Cincinnati Traction Co.
 
 v.
 
 Durack, Admx.,
 
 78 Ohio St., 243, 85 N. E., 38; 39 Ohio Jurisprudence, 872, Section 216.
 

 In this case, the defendant in its defense established additional facts and circumstances which require further consideration. It was developed that coincident with the cleaning and painting being done on th$ over
 
 *147
 
 .head structural work and walls of the warehouse building of the defendant by the Central Painting Company, ■certain concrete pickling váts were being constructed ■on the floor or ground surface at the south end of the .same building by the John L. Joyce Company, as an .independent contractor, employed for that purpose by ■the defendant.
 

 It is now urged by the plaintiff that the record does ■not disclose that the John L. Joyce Company performed the work as an independent contractor. How■ever, the undisputed testimony shows that the men who did the work were employed by the John L. J oyce •Company- which was engaged in the business of installing all kinds of concrete work, sidewalks, floors •and walls. Both parties during the course of the trial treated the John L. Joyce Company as being employed ■by the defendant as an independent contractor. During the court’s charge, counsel for defendant requested the court to charge on that subject, whereupon the •court, without objection from counsel for plaintiff, did •charge the jury to the effect that if the crane, at the time of plaintiff’s injury, was not operated by a person acting for the defendant but for and on behalf of the John L. Joyce Company, then the Wilkoff Company could not be charged with the conduct of this ■operator of the crane. Furthermore, the court directed the jury to determine what the relationship of 'the crane operator was to the defendant company before proceeding to determine whether the operator of the crane was or was not negligent. Under this state •of the record, it is now too late for the plaintiff to assert as a fact, that which it did not assert during the 'trial, namely, that the John L. Joyce Company was not an independent contractor employed as such by the defendant.
 

 The testimony shows 'that in constructing the con•crete pickling vats which were 25 feet wide, 30 or 40
 
 *148
 
 feet long and 6 feet deep, it was necessary to move a number of yards of earth in order to level up the bottom of these vats before pouring the cement floor. To have this earth so removed, Gregory Ramm, a foreman of the John L. Joyce Company, went down to another shop or building of the defendant where about 14 of defendant’s employees were at work digging ditches, and made a request that a man come up to the shop where the vats were being installed and operate the shop crane to move the earth in question.
 

 The legal relationship of the person who operated the crane to the defendant and to the John L. Joyce Company at the time of the accident, must be determined from the testimony of two witnesses who testified on this subject. The testimony of Gregory Ramm, a foreman of the John L. Joyce Company, was as follows:
 

 . “Q. And did you have occasion on that morning to use the facilities of the Wilkoff Company, that is any of their machinery? A. Yes, we had the walls in and we were getting the floor base, the sub-base for the dirt ready for the floor or bottom of the pit and we. needed more dirt to bring it up to the right grade to place the concrete and I think there was three buckets holding about two yards of dirt piled in there full of dirt and needed a crane to lift them and to pick them up.
 

 “Q. What did yon do? A. Well, I looked around' there for somebody I figured was in charge and I went outside, there was. men working outside putting a sewer in or something. I found a man looked like he was in charge and I asked if he could get a crane down there and he said he would, and I came back inside and went to work. * * *
 

 “Q. What did you do in order to get this crane, who did you go to see? A. I went to see a man who
 
 *149
 
 looked to me to be in charge of putting the pipe line in, whatever they are doing outride.
 

 “Q. To a Wilkoff man were you looking for in ■order to get permission to use the crane? A. Yes, I was looking for sort of a boss of the Wilkoff firm and •this man looked to me as though he was. * * *
 

 “Q. And you went to him and talked to him and .asked him for a crane operator? A. I asked him if I could get the crane down to make a lift.
 

 “Q. What did he do? A. He said he would so I -walked away.
 

 “Q. Hid he go immediately or send a man? A. I ■don’t remember whether he sent a man or went himself, I just told him and then I left. * * *
 

 “Q. And that crane operator was an employee of the Wilkoff Company? A. I couldn’t say, I don’t know even who ran the crane.”
 

 The person who responded to the request .of Eamm "to operate the crane was Joseph Ferarra. He was then and for two years had been employed by the Wilkoff Company as a steel gauger, and on the day in •question was working in or near the new building. For two years prior to the last two years above mentioned, ■he had been employed as a crane operator by the defendant company. He was not, on the day of plaintiff ’»■ injury, a boss or foreman of the defendant company, but worked under another as his boss. Ferarra, after •explaining that on the morning in question he was working at the new building gauging steel, testified ■as follows:
 

 “Q. Do you recall who those men were? Never-mind. Were you at any time during that morning called outside the building? A. Well, yes, .a fellow •came up and asked me to go down to the lower shop where there was some work, to come and run the crane; I told him I had no authority.
 

 
 *150
 
 “Q. Who was that fellow? A. I don’t Mow him. # * *
 

 ‘ ‘ Q. Did you go ? A. After I had hesitated I thought I would help him out some and started down. I told the fellows working with me to go ahead and clean up until 1 got back. * * *
 

 “Q. You were called upon to lift that dirt out of that pit and take it where? A. They were dumping it over on the side or back on the tracks.
 

 “Q. And you had done that before? A. No.”
 

 On cross-examination Eerarra testified further as follows:
 

 “Q. What brought you over into this lower warehouse building? A. A fellow came up and asked me to run the crane.
 

 “Q.' Who is this fellow? A. I don’t know him.
 

 “Q. Was he a Wilkoff man? A. No, I know that.
 

 “Q. How was it you left your line of work you were doing for the Wilkoff Company to go and help a man that asked you to come over and operate a crane? A. I did it as a favor.
 

 “Q. You are an employee of the Wilkoff Company and you have a boss, haven’t you? A. Yes. * * *
 

 “Q. And he tells you when to work and you mean to tell this jury here that some man came over and asked you to operate a crane over in a different building from where you were and while you were working for the Wilkoff-Company in order to do a favor? A. That is right.
 

 “Q. Does that sound like a good employee of the company? A. That is not for me to answer.”
 

 It seems to the majority members of this court that the record fails to disclose that Eerarra had any authority, either because of his own relationship to the defendant, or from any other person authorized to speak for the defendant, to abandon, the work to which he had been assigned and in which he was then en
 
 *151
 
 gaged, and go to another part of defendant’s property to render service to one who was on the property in the relation of an independent contractor to the defendant.
 

 And if it were conceded that Ferarra had been authorized to leave his regular employment and to go as requested by the John L. Joyce Company to render service for it, the defendant would not be liable for his negligent act while engaged in such service. Under such circumstances he had the status of a loaned employee so far as the defendant was concerned. The rule applicable to such a situation is stated in the case of
 
 Rourke
 
 v.
 
 White Moss Colliery Co.
 
 (Eng. L. R.),
 
 2
 
 C. P. Div., 205, as follows:
 

 “* * * when one person lends his servant to another for a particular employment, the servant for anything done in that particular employment must be dealt with as the servant of the man to whom he is lent, although he remains the general servant of the person who lent him.” See,
 
 Braun
 
 v.
 
 Averdick, supra,
 
 at page 616.
 

 “If the employer temporarily loans his general servant to assist the contractor, and the servant thereby comes under the control of the contractor, the original relation of master and servant ceases and the contractor alone is liable for the negligence of the servant while he has control of Ms movements.” 27 American Jurisprudence, 511, Section 32; citing
 
 Higgins
 
 v.
 
 Western Union Telegraph Co.,
 
 156 N. Y., 75, 50 N. E., 500, 66 Am. St. Rep., 537;
 
 New Orleans, B. R., V. & M. Rd. Co.
 
 v.
 
 Norwood,
 
 62 Miss., 565, 52 Am. St. Rep., 191; and
 
 Powell
 
 v.
 
 Virginia Construction Co.,
 
 88 Tenn., 692, 13 S. W., 691, 17 Am. St. Rep., 925. See, also, 21 Ohio Jurisprudence, 647, Section 23.
 

 On this subject, 35 American Jurisprudence, 970, Section 541, says:
 

 “Indeed, as a general proposition, if one person
 
 *152
 
 lends his servant to another for a particular employment, the servant, for anything done in that employment, is dealt with as the servant of the one to whom, he has been lent, although he remains the general servant of the person who lent him. An employer is not liable for injury negligently caused by a servant if the-latter is not at the time in the service of the employer,, but in the special service of another, although the question of liability is ultimately dependent upon the determination of who has the power to control and direct at the exact time of the act in question. In other words,, in determining whether, in respect of a particular act,, a servant, in the general employment of one person,, who has been loaned for the time being to another is the servant of the original employer or the person to whom he has been loaned, the test is whether in the-particular service which he is engaged to perform, the servant continues liable to the direction and control of his general employer or becomes subject to that of the person to whom he is lent, — whether the latter is in control as proprietor so that he can at any time-stop or continue the work and determine the way in which it is to be done, with reference not only to the-result reached but to the method of reaching it.”' See, also,
 
 Samuelian
 
 v.
 
 American Tool & Machine Co.,
 
 168 Mass., 12, 46 N. E., 98;
 
 Brown
 
 v.
 
 Jarvis Engineering Co.,
 
 166 Mass., 75, 43 N. E., 1118;
 
 Moss
 
 v.
 
 Chronicle Publishing Co.,
 
 201 Cal., 610, 258 P., 88, 55 A. L. R., 1258;
 
 Ramsey
 
 v.
 
 New York C. Rd. Co.,
 
 269 N. Y., 219, 199 N. E., 65, 102 A. L. R., 511; 1 Restatement of Agency, 500, Section 227.
 

 Since the question of liability is always predicated upon some specific act of the servant, it is not important whether he remains the servant of the general employer as to matters generally, but whether, in performing the act in question, he is acting in the business of and under the direction of the general employer
 
 *153
 
 or that of the temporary employer. The mere fact that the general employer continues to pay the wages of the servant who has committed the wrong will not make such employer liable for the wrongful act where it appears that the person, to whom the servant is lent, controlled him entirely as to the work done.
 
 Miller
 
 v.
 
 Minnesota & N. W. Ry. Co.,
 
 76 Iowa, 655, 39 N. W., 188.
 

 Who was the employer of Ferarra in the operation of the crane at the time of the accident in question depends upon whether he was sent by his general eim plover to assist the independent contractor in prosecuting the work and business of his general employer, the defendant here, or whether he was sent or went to the independent contractor to take orders from it and to assist it in performing what was required of it in carrying out its contract with the defendant.
 

 The majority members of this court take the view that Ferarra, at the time in question, was engaged in the latter capacity. In the case at bar the instrumentality, the crane, was not being operated in the ordinary course of business of the defendant. In this respect the present case is to be distinguished from the case of
 
 Hozian
 
 v.
 
 Crucible Steel Casting Co.,
 
 132 Ohio St., 453, 9 N. E. (2d), 143. There is no evidence that the defendant had agreed to operate the crane for the John L. Joyce Company or had given permission to the Joyce company to operate the crane in connection with its work, and especially no evidence, aside from the testimony of Ferarra as above set out, that the defendant had offered or agreed to furnish a crane operator for that purpose. The defendant did not retain control over Ferarra, but when he responded to the request which the John L. Joyce Company made of him, he was attempting not to move steel or scrap which was the business of the defendant, hut to perform work for the John L. Joyce Company in moving
 
 *154
 
 dirt for its benefit in the performance of its contractFerrara was then subject to its orders and it could have directed him to cease work for it at any time. To-discharge him from its employment did not require his discharge from his general employment with the defendant.
 

 At the conclusion of all the evidence, the defendant, renewed its motion for a directed verdict. The court, should have sustained this motion but failed to do so. ■ The judgment following a verdict for the plaintiff was erroneously affirmed by the Court of Appeals. The-judgment of the Court of Appeals is reversed and final judgment is entered for the defendant.
 

 Judgment reversed.
 

 Matthias, Zimmerman, Bell and Turner, JJ., concur.
 

 Weygandt, C. J., and Williams,-J., dissent.