HELMICK ET AL., APPELLEES, *v.* REPUBLIC-FRANKLIN INSURANCE COMPANY, APPELLANT.

[Cite as Helmick *v.* Republic-Franklin Ins. Co. (1988), 39 Ohio St. 3d 71.]

(No. 87-1487—Submitted May 11, 1988—Decided October 12, 1988.)

*Ronald E. Stocker* and *Thomas E. Stocker,* for appellees.

*Baker, Meekison & Dublikar, Jack R. Baker* and *Gregory A. Beck,* for appellant.

LOCHER, J. This action presents two issues for review: (1) whether appellant waived its right to preserve as error the denial of its motion for directed verdict presented at the conclusion of appellees' case in chief and (2) whether the trial court properly overruled appellant's motions for directed verdict on the issue of punitive damages. We hold in the negative on both issues and reverse the judgment of the court of appeals with regard to punitive damages.

## I

Appellant's first assignment of error in the court of appeals was as follows:

"The trial court erred in overruling the appellant's motions for directed verdict on the issues of bad faith and punitive damages, in that the trial was devoid of evidence which would support a finding that the appellant

acted in bad faith in denying coverage."

After reviewing the denial of appellant's motion for a directed verdict at the end of appellees' case in chief, the court of appeals concluded:

"Appellant's argument is that since appellees presented *no* evidence of bad faith in their case-in-chief, the appellant could make his [*sic*] motion for directed verdict, and after same had been, according to appellant, erroneously overruled, proceed to offer evidence in his [*sic*] case and not waive his [*sic*] right to rely on the denial of his [*sic*] original motion.

"The law is to the *contra.* * * *"

The court of appeals reached this conclusion by substantially relying upon the second and third syllabus paragraphs of *Halkias* v. *Wilkoff Co.* (1943), 141 Ohio St. 139, 25 O.O. 257, 47 N.E. 2d 199, which provide:

"2. When a motion of a defendant for a directed verdict is made at the conclusion of plaintiff's evidence and overruled, the defendant has an election either to stand on his exception to the ruling or to proceed with his defense; and if he accepts the ruling, however erroneous it may be, and proceeds with his defense, introducing evidence on his own behalf, he thereby waives his right to rely on the denial of his original motion.

"3. The renewal of defendant's motion to direct a verdict at the close of all the evidence, challenges, not the sufficiency of the evidence that was alone before the court and jury at the time the original motion was made, but the evidence and the state of the record as it exists at the conclusion of all the evidence."

Appellant maintains that this "waiver doctrine" is outdated and eviscerates the fundamental requirement that a plaintiff must sustain his burden of proof before any defense is necessary. We agree and find such doctrine to be illogical as well. Therefore, based on the following, we overrule paragraphs two and three of the syllabus of the *Halkias* decision.

Under *Halkias,* a defendant is forced to simply rest his case in order to preserve error when the trial court fails to grant a motion for directed verdict at the close of the plaintiff's case in chief. Thus, the defendant risks an adverse verdict and must hope for reversal on appeal. If he proceeds to present a defense, he is forever barred from arguing the trial court's ruling as error no matter how egregious the trial court's determination might have been. Finally, while a renewal of the motion at the close of all the evidence would entitle the defendant to a review of the ruling based on the record of the *entire trial,* the defendant has still forever lost the opportunity for review of the previous ruling on the portion of the record toward which the original motion was directed. To force any party involved in litigation into this position defies logic and soundly defeats the basic principle that a party wishing to preserve an error for appeal may do so by means of a timely objection.

Furthermore, a thorough review of the *Halkias* decision itself reveals a fatal flaw which merits additional justification for overruling syllabus paragraphs two and three thereof. In arriving at its conclusion, *Halkias* relied upon *Cincinnati Traction Co.* v. *Durack* (1908), 78 Ohio St. 243, 85 N.E. 38; *Zanesville* v. *Stotts* (1913), 88 Ohio St. 557, 106 N.E. 1051; and *Youngstown & Suburban Ry. Co.* v. *Faulk* (1926), 114 Ohio St. 572, 151 N.E. 747. In each of these cases, the defendant moved for a directed verdict at the conclusion of the plaintiff's case. The motion was overruled by the trial court. Following such adverse ruling, the defendant offered evidence in its defense. However, in each of *these* cases, the defendant *did not* renew his

motion for directed verdict at the conclusion of all the evidence. On appeal, the reviewing courts held that the original motion for directed verdict and any appeal therefrom were waived *because the defendant failed to renew the motion at the conclusion of all the evidence.* The *Halkias* court neglected to recognize that it was not the defendant's presentation of a defense which constituted a waiver — it was the defendant's failure to renew the motion at the close of all the evidence.

"Without renewing the motion for [directed] verdict, which would challenge the action of the court on the whole evidence adduced, the defendant consents that the issues go to the jury for decision on the facts, and leaves no question of fact or law to be determined by the court." *Durack, supra,* at 248, 85 N.E. at 39. The cases relied upon in *Halkias* present a completely different set of facts from those of the cause *sub judice.* Appellant renewed its motion at the conclusion of all the evidence in the instant case.

Finally, we find a conflict between the decision in *Halkias* and Civ. R. 50(A)(2). That rule provides in pertinent part:

"A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted * * * to the same extent *as if the motion had not been made* * * *." (Emphasis added.)

To the contrary, the rule established in *Halkias* does not allow the party making the motion to proceed but forces that party to choose between the risks of standing on the trial court's initial error or proceeding with the case and forfeiting the right to appeal the denial of the directed verdict. It clearly does not allow a party to proceed "to the same extent as if the motion had not been made." Thus, in

resolution of this conflict, we find that Civ. R. 50(A)(2) supersedes the rule adopted in *Halkias.*

Based on all the foregoing, it is obvious that syllabus paragraphs two and three of the *Halkias* decision should no longer be part of the law of this state. Accordingly, we hold that when a motion for directed verdict is made by a defendant at the conclusion of the plaintiff's case and is overruled, the defendant's right to rely on the denial of that original motion as error is not waived when the defendant proceeds to present his evidence and defense as long as the motion is renewed at the conclusion of all the evidence.

## II

We next address the issue of whether the trial court properly overruled appellant's motions for directed verdict on the issue of punitive damages.

A motion for directed verdict does not present factual issues, but a question of law. However, in deciding such a motion, it is necessary to review and consider the evidence. *O'Day* v. *Webb* (1972), 29 Ohio St. 2d 215, 219, 58 O.O. 2d 424, 426, 280 N.E. 2d 896, 899.

"* * * [I]t is uncontestably the duty of a trial court to submit an essential issue to the jury when there is sufficient evidence, if believed, relating to that issue to permit reasonable minds to reach different conclusions on that issue. * * * [Citations omitted.] Conversely, it is also the duty of a trial court to withhold an essential issue from the jury when there *is not* sufficient evidence relating to that issue to permit reasonable minds to reach different conclusions on that issue. In other words, if all the evidence relating to an essential issue is sufficient to permit only a conclusion by reasonable minds against a party, after construing the evidence most favorably to that

party, it is the duty of the trial court to instruct a finding or direct a verdict on that issue against that party." (Emphasis *sic.*) *Id.* at 220, 58 O.O. 2d at 427, 280 N.E. 2d at 899-900.

After construing the evidence herein most favorably to appellees, we are unable to comprehend how the trial court in this action failed to direct a verdict in favor of appellant on the bad-faith and punitive-damages claim at the conclusion of appellees' case or at the conclusion of all the evidence.

In *Hoskins* v. *Aetna Life Ins. Co.* (1983), 6 Ohio St. 3d 272, 6 OBR 337, 452 N.E. 2d 1315, we held in paragraph two of the syllabus that:

"Punitive damages may be recovered against an insurer who breaches [its] duty of good faith in refusing to pay a claim of its insured upon proof of actual malice, fraud or insult on the part of the insurer."

That holding was premised on the theory that there is a duty imposed upon an insurer to act in good faith and that any bad-faith refusal to pay a claim is a breach of that duty. Consequently, "[i]nasmuch as the breach of the duty to act in good faith is tortious in nature, punitive damages may be recovered against an insurer [that] breaches [its] duty of good faith in refusing to pay a claim of its insured upon adequate proof." *Id.* at 277, 6 OBR at 341, 452 N.E. 2d at 1320. However, *Hoskins* also emphasized

that punitive damages are not recoverable against an insurer for refusal to pay a valid claim unless the refusal is both unjustified and in bad faith.[1] *Id.* See, also, *Carr* v. *Charter Natl. Life Ins. Co.* (1986), 22 Ohio St. 3d 11, 22 OBR 9, 488 N.E. 2d 199. Nor does the fact that a party is entitled to compensatory damages mean that he is entitled to exemplary damages. *Hoskins, supra,* at 278, 6 OBR at 342, 452 N.E. 2d at 1321.

The record in the cause *sub judice* shows a glaring absence of any set of facts to support a finding of bad faith on the part of appellant. Appellant was reasonably justified to question coverage of this claim. Timothy Helmick was in dire financial straits at the time of the fire.[2] The First National Bank of Massillon had maintained a foreclosure action and the property in question had been scheduled to be sold at sheriff's sale approximately one week after the fire occurred. At least one person had heard Timothy Helmick state that he would burn his home before the bank would take it. Finally, appellant's fire investigators concluded that the fire "was incendiary in origin with gasoline being used to further its progression." With these facts before it, we can say that an insurer would have a reasonable justification for questioning coverage of this claim.

There is also no proof of actual malice, fraud or insult on the part of

---

[1] "Bad faith" has been defined as " '* * * a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.' " *Hoskins, supra,* at 276, 6 OBR at 341, 452 N.E. 2d at 1320, quoting *Slater* v. *Motorists Mut. Ins. Co.* (1962), 174 Ohio St. 148, 21 O.O. 2d 420, 198 N.E. 2d 45, paragraph two of the syllabus.

[2] Timothy Helmick owed approximately one thousand dollars per month in mortgage debt and was well behind in payments. He also owed substantial monthly sums for debts on his automobile and a motor home. He was in arrears on these payments as well. Helmick also owed his ex-wife approximately $7,500 pursuant to the provisions of a separation agreement. Timothy Helmick's income in 1981 was approximately $3,500.

this insurer. At best, appellees claim that appellant undertook an arson investigation soon after the fire and failed to inform them that arson was suspected until the claims were rejected. These facts merely show inaction. Construing this evidence most strongly in favor of appellees, we fail to see how such an omission could constitute actual malice under any definition.[3] Appellees did not establish any affirmative action on the part of appellant that would support a claim for punitive damages. *Hoskins, supra,* at 279, 6 OBR at 343, 452 N.E. 2d at 1322. Moreover, the reservation-of-rights agreement signed by Timothy Helmick specifically stated that appellant questioned Helmick's claim of coverage. Timothy Helmick also testified that appellant acted in bad faith because it denied his claim and refused to pay him. Mere refusal to pay an insurance claim is not, in itself, conclusive of an insurer's bad faith. *Id.* at 277, 6 OBR at 341, 452 N.E. 2d at 1320.

Close scrutiny of the record does not support a determination that the facts in this case sustain a claim for punitive damages. Permitting the bad-faith and punitive-damages claims to go to the jury allowed that body to speculate as to the amount of the damages. The issue should not have been before the jury.

Based on the foregoing, we reverse the judgment of the court of appeals on the issue of punitive damages and enter final judgment on such issue for appellant.[4]

*Judgment accordingly.*

MOYER, C.J., SWEENEY, HOLMES and DOUGLAS, JJ., concur.

WRIGHT and H. BROWN, JJ., concur separately.

H. BROWN, J., concurring. Although I concur in the judgment reached by the majority, I disagree with the majority's determination to gratuitously overrule paragraph three of the syllabus in *Halkias* v. *Wilkoff Co.* (1943), 141 Ohio St. 139, 25 O.O. 257, 47 N.E. 2d 199.

*Halkias* held that: "The renewal of defendant's motion to direct a verdict at the close of all the evidence, challenges, not the sufficiency of the

---

[3] "Actual malice" was defined in *Hoskins* as:

" ' * * * " 'that state of mind under which a person's conduct is characterized by hatred or ill will, a spirit of revenge, retaliation, or a determination to vent his feelings upon other persons.' " * * *

" 'Appellants assert in their sole proposition of law that "intentional, reckless, wanton, willful and gross acts which cause injury to person or property may be sufficient to evidence that degree of malice required to support an award of punitive damages in tort actions." This broad statement is also correct; actual malice may be inferred from conduct and surrounding circumstances. * * *' (Citations omitted.)." *Id.* at 277, 6 OBR at 341-342, 452 N.E. 2d at

1320-1321, quoting *Columbus Finance* v. *Howard* (1975), 42 Ohio St. 2d 178, 183-184, 71 O.O. 2d 174, 177, 327 N.E. 2d 654, 658.

"Actual malice" was also most recently defined as "* * * (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, *or* (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." (Emphasis *sic*.) *Preston* v. *Murty* (1987), 32 Ohio St. 3d 334, 512 N.E. 2d 1174, syllabus.

[4] Our decision does not in any way disturb the jury's award of compensatory damages to appellees.

evidence that was alone before the court and jury at the time the original motion was made, but the evidence and the state of the record as it exists at the conclusion of all the evidence." *Id.*

That holding has been the law in Ohio for forty-five years and it is in accord with long-standing authority from other jurisdictions. As early as 1893, the United States Supreme Court stated:

"A defendant has an undoubted right to stand upon his motion for a nonsuit, and have his writ of error if it be refused; but he has no right to insist upon his exception, after having subsequently put in his testimony and made his case upon the merits, since the court and jury have the right to consider the whole case as made by the testimony. It not infrequently happens that the defendant himself, by his own evidence, supplies the missing link, and, if not, he may move to take the case from the jury upon the conclusion of the entire testimony." *Bogk* v. *Gassert* (1893), 149 U.S. 17, 23.

Federal courts facing the issue under the Federal Rules of Civil Procedure have been uniform in following *Bogk's* rule that the court should " 'have the right to consider the whole case.' " *Alston* v. *Bowins* (C.A.D.C. 1984), 733 F. 2d 161, 163-164; accord *Peterson* v. *Hager* (C.A. 10, 1984), 724 F. 2d 851, 854; see, generally, *Newman* v. *Brengle* (C.A. 7, 1958), 250 F. 2d 660; *Auto Transport* v. *Potter* (C.A. 8, 1952), 197 F. 2d 907. "Technically a party waives his right to a directed verdict, if the motion is made at the close of his opponent's case, and thereafter he introduces evidence in his own behalf. However he may renew the motion at the close of all the evidence. * * * *The renewed motion will be judged in the light of the case as it stands at that time.* Even though the court may have erred in denying the initial motion, this error is cured if subsequent testimony on behalf of the moving party repairs the defects of his opponent's case." (Emphasis added.) 9 Wright & Miller, Federal Practice and Procedure (1971) 588-590, Section 2534.

The federal rule governing directed verdicts, Fed. R. Civ. P. 50(a), is the paradigm for the Ohio rule governing directed verdicts, Civ. R. 50(A)(2), and contains identical language to that recited from the Ohio rule by the majority.[5] Thus, there is no statutory basis for Ohio to deviate from federal precedent, particularly where such deviation violates the principle of *stare decisis*.

Further, state courts appear to be in accord with the federal courts. See *Abston* v. *Medora Grain, Inc.* (1971), 206 Kan. 727, 482 P. 2d 692; *Gulf Heating & Refrigeration* v. *Iowa Mut. Ins. Co.* (Fla. 1966), 193 So. 2d 4; *Smith* v. *Sharp* (1962), 85 Idaho 17, 375 P. 2d 184.

The majority, in its zeal to give a defendant the right to preserve error for appeal when a motion for directed verdict has been overruled, has elevated technicality over substance.

Though a plaintiff with a meritorious cause of action fails to establish each element of his action, the defendant may supply the gaps by his presentation of evidence. If that happens, the result under the majority

---

[5] Both Fed. R. Civ. P. 50(a) and Ohio Civ. R. 50(A)(2) provide in relevant part: "A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and *to the same extent as if the motion had not been made.* * * *" (Emphasis added.)

holding is a denial of a remedy for a wrong committed. I believe it is more important to fairly resolve a substantive cause of action than to grade the performance of a trial judge. Under the logic of the majority decision, if a trial judge erroneously denied a motion for a directed verdict after plaintiff's opening statement, and the plaintiff went on to establish a justified cause of action, the appellate court should nonetheless find for the defendant.

The issue at hand is similar to the one presented when a complaint fails to identify all the issues raised by the evidence. Under Ohio pleading rules, which are designed to ensure that justice is not denied by technicalities, "* * * the court may allow the pleadings to be amended and *shall do so freely when the presentation of the merits of the action will be subserved thereby* * * *." (Emphasis added.) Civ. R. 15(B). The same principles should apply when a motion for a directed verdict is erroneously denied by a trial court and a defendant subsequently presents evidence which cures the inadequacy of the plaintiff's case.

Admittedly, the defendant will sometimes be faced with a difficult choice: whether to proceed with his case and risk helping the plaintiff, or whether to stand on his motion and hope the appellate court will support that stand. However, this is a question of trial tactics, not substantive rights. Upon proper objection, the defendant always retains the right to have the denial of a directed verdict motion reviewed by an appellate court on the basis of the whole record.

Moreover, the majority's analysis suffers from a certain illogic. On the one hand, the majority overrules precedent which holds that a defendant waives his objection to the denial of a directed verdict by presenting evidence. On the other hand, the majority affirms precedent which requires a defendant to renew his motion for a directed verdict at the close of all the evidence in order to preserve the original denial of a directed verdict for appeal. If the basis for the majority decision is to preserve an error for appeal, why the need for a second motion at the close of all the evidence?

Finally, the majority ignores the primary purpose of a directed verdict which is to enhance judicial efficiency. *Alston, supra,* at 164 ("The directed verdict serves a single, albeit important, interest: judicial efficiency."); *Rutherford* v. *Central Illinois RR. Co.* (C.A. 5, 1960), 278 F. 2d 310, 312 ("A directed verdict is a device to save time and trouble involved in lengthy jury determination."), certiorari denied (1960), 364 U.S. 922. Allowing an appellate court to review the denial of a directed verdict at the close of the plaintiff's case does not further this goal.

Accordingly, I would adhere to the rule in *Halkias, supra,* and follow the precedent established in the federal and state courts.

WRIGHT, J., concurs in the foregoing opinion.