OPINION
{¶ 1} Appellant/Cross-Appellee Drake Construction ("Drake") appeals the decision of the Stark County Court of Common Pleas that granted summary judgment in favor of Appellee/Cross-Appellant SJD Construction Company ("SJD"). The following facts give rise to this appeal.
 {¶ 2} On August 3, 2001, SJD signed a subcontractor agreement, with Drake, for the renovation of the National First Ladies' Library located in Canton. Drake served as the general contractor on the project. Patrick Sauers was Drake's field superintendent and was responsible for overseeing the project and coordinating all aspects of the construction.
 {¶ 3} SJD served as a subcontractor. Pursuant to the terms of the subcontractor agreement, Drake paid SJD $140,975.00 to perform various demolition services at the library, which were completed by March 15, 2002. Several months after SJD completed its work under the subcontractor agreement, Drake asked SJD if it could borrow an SJD employee to assist with cleanup from the construction. Drake needed to borrow an employee to do the cleanup work because it was contractually required to use a union employee to do the work and it had no contact with the union hall. SJD agreed to loan one of its employees, Alvin Newman, to Drake for that purpose. SJD received compensation for this service.
 {¶ 4} Another subcontractor on the library project was Frank Novak and Sons Company. On July 22, 2002, Randall Carrico, a Novak employee, sustained a fatal injury when he was struck in the head by an object while he was in or near a trash dumpster situated outside the library. As a result of this fatal accident, in February 2004, Appellant/Cross-Appellee Vicki Carrico ("Appellant Carrico") filed a complaint against Appellees Drake, SJD and several other parties that were subsequently dismissed from the case.
 {¶ 5} After the completion of discovery, SJD filed a motion for summary judgment. In its motion, SJD argued that its only employee on the jobsite, on the day of the fatal injury, was Alvin Newman, who was a "loaned servant" to Drake. Appellee Carrico filed a brief in support of SJD's motion for summary judgment. On January 12, 2005, the trial court conducted a hearing on SJD's motion. At this hearing, counsel for SJD and Appellee Carrico argued that Drake and its field superintendent had exclusive control over Alvin Newman on the day of the accident.
 {¶ 6} At the conclusion of the hearing, the trial court granted summary judgment to SJD and stated as follows:
 {¶ 7} "It's unusual for the Court to rule from the bench in these types of situations; however, the Court, as the Court indicated at the beginning of the oral arguments, had read the briefs and memoranda filed relative to these motions and found that they were very thorough in their presentations and that based upon the evidence in this particular case there is no genuine issue of material fact. The court finds as a matter of law that Mr. Newman was in fact a loaned servant of Drake Corporation — let me make sure I — I'm sorry, it's Drake Construction Company, and therefore, this Court is going to sustain both the motion of SJD Construction Company and the motion of the Plaintiff Vickie Carrico, individually and as executrix of the estate of Randall W. Carrico, deceased and Vickie Carrico, individually." Tr. Hrng, Jan. 12, 2005, at 47-48.
 {¶ 8} On January 19, 2005, the trial court filed a written judgment entry granting SJD's motion for summary judgment. The trial court filed a nunc pro tunc entry on July 18, 2005, adding Civ.R. 54(B) language. Sometime prior to July 25, 2005, the remaining parties to the case settled this matter. Subsequently, on July 27, 2005, the trial court signed a judgment entry containing various findings of fact.
 {¶ 9} Thereafter, Drake filed a notice of appeal and SJD cross-appealed. The parties set forth the following assignments of error for our consideration:
 Direct Appeal {¶ 10} "I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO SJD CONSTRUCTION AS ALVIN NEWMAN WAS AN EMPLOYEE OF SJD CONSTRUCTION, AS A MATTER OF LAW.
 {¶ 11} "II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO SJD CONSTRUCTION AS A QUESTION OF FACT EXISTED CONCERNING WHETHER ALVIN NEWMAN WAS AN EMPLOYEE OF SJD OR DRAKE CONSTRUCTION.
 {¶ 12} "III. THE TRIAL COURT ERRED IN FINDING THAT ALVIN NEWMAN WAS THE LOANED SERVANT OF DRAKE CONSTRUCTION AS A GENUINE ISSUE OF FACT EXISTED CONCERNING WHETHER A DUAL AGENCY RELATIONSHIP EXISTED INVOLVING SJD CONSTRUCTION AND DRAKE CONSTRUCTION."
 Cross-Appeal {¶ 13} "1. THE TRIAL COURT ERRED IN THE (SIC) SIGNING THE JULY 27, 2005 JUDGMENT ENTRY BECAUSE:
 {¶ 14} "A) THE JULY 27 JUDGMENT ENTRY IS INCONSISTENT WITH THE TRIAL COURT'S EARLIER GRANT OF SUMMARY JUDGMENT TO SJD CONSTRUCTION CO.;
 {¶ 15} "B) THE JULY 27 JUDGMENT ENTRY IS COLLUSIVE BECAUSE, DESPITE THE STATEMENT IN THE JULY 27 JUDGMENT ENTRY THAT A `BENCH TRIAL' OCCURRED, THERE IS NO TRANSCRIPT OF ANY SUCH TRIAL AND THE COURT'S OWN RECORDS SHOW THAT THE REMAINING CLAIMS OF THE REMAINING PARTIES WERE SETTLED; AND
 {¶ 16} "C) SJD CONSTRUCTION CO. CANNOT CONSTITUTIONALLY BE BOUND BY ANY FINDING OF FACT IN THE COLLUSIVE JULY 27 JUDGMENT ENTRY.
 {¶ 17} "2. THE TRIAL COURT ERRED IN PURPORTING TO HOLD A `TRIAL BY BRIEF' TO DECIDE DISPUTED ISSUES OF FACT."
 Summary Judgment Standard {¶ 18} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party,Inc. (1987), 30 Ohio St.3d 35, 36. As such, we must refer to Civ.R. 56 which provides, in pertinent part:
 {¶ 19} "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *"
 {¶ 20} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421,429, 1997-Ohio-259, citing Dresher v. Burt, (1996),75 Ohio St.3d 280.
 {¶ 21} It is based upon this standard that we review Drake's assignments of error.
 I, II {¶ 22} We will address Drake's First and Second Assignments of Error simultaneously as both concern the issue of whether Alvin Newman was an employee of SJD or Drake at the time of the accident. Drake maintains Newman was an employee of SJD and therefore, the trial court erred when it concluded Newman was a loaned servant to Drake. We disagree.
 {¶ 23} In Haldeman v. Cross Enterprises, Inc., Delaware App. No. 04-CAE0-2011, 2004-Ohio-4997, this Court discussed the loaned servant doctrine. We explained that:
 {¶ 24} "In Halkias v. Wilkoff Company (1943),141 Ohio St. 139, [overruled on other grounds Helmick v. Republic-FranklinIns. Co. (1988), 39 Ohio St.3d 71] the Ohio Supreme Court set forth the test for courts to use in determining who is the employer of a person, when an employee in the general employment of one person, has been loaned for the time being to another for a particular task. The test is whether while performing the task, the employee continues to be liable to the direction and control of the general employer, or becomes subject to that of the person to whom he is lent. Thus, in Ragone v. Vitale Beltomi, Jr.,Inc. (1975), 42 Ohio St.2d 161, the Ohio Supreme Court held the operator of a pumping machine supplying concrete at a construction site, is not a loaned servant of the company receiving the concrete. The court noted the pumper driver was entrusted with a valuable piece of machinery, and could not leave the machine while it was in operation. The contractor accepting the concrete gave no directions to the driver on how to operate the pumper.
 {¶ 25} "Likewise, in Hamlin v. The McAlpin Company (1964),175 Ohio St. 517, the driver of a delivery truck was deemed not a loaned servant. In Hamlin, the driver parked his truck at the rear entrance to the store and part of his freight was unloaded. Someone, either an employee of the store or of the contractor who was remodeling the store, told the truck driver to take his truck around the front entrance of the store to unload the remaining part of the freight. While doing so, an employee of the contractor was injured. The court found as a matter of law the driver in the case was not a loaned servant because the entire situation was within the scope of his employment." Haldeman at ¶ 20, ¶ 21.
 {¶ 26} Drake refers to the following deposition testimony in support of its argument that Newman remained an employee of SJD and was not a loaned servant to Drake. First, Newman testified that he knew the regular clean-up routine and he did not need Sauers nor any other Drake employee to tell him how to perform his work. Depo. Alvin Newman at 59. Second, the deposition testimony of Sauers, Joseph Duale, an owner of SJD, and Newman all indicate that Drake did not exercise direct control over the manner or means of how Newman performed the particular clean-up work that caused Carrico's fatal injury. Rather, Drake maintains the deposition testimony establishes that it only instructed Newman which floors required clean up and that Newman himself controlled the means and manner of performing it.
 {¶ 27} Third, Joseph Duale and Alvin Newman both testified that Drake and Pat Sauers lacked the authority to remove Newman from the construction site. Depo. Joseph Duale at 71; Depo. Alvin Newman at 70. Fourth, both Duale and Newman testified that if a problem developed regarding Newman's work, either Sauers or Drake would have had to contact Duale or SJD to remove Newman from the construction site. Depo. Joseph Duale at 71; Depo. Alvin Newman at 70. Finally, Newman testified that Sauers and Drake lacked the authority to replace Newman with a different laborer. Depo. Alvin Newman at 70.
 {¶ 28} Based upon the above deposition testimony, Drake argues it did not have control over the detail and manner by which Newman performed his duties. Instead, Drake argues it merely instructed Newman and the other laborers where in the library to perform the clean-up work.
 {¶ 29} SJD responds that the facts of the case sub judice meet all of the elements of the loaned servant doctrine. Specifically, SJD loaned Newman, to Drake, to perform work under Drake's field superintendent, Patrick Sauers. Sauers alone was responsible for giving directions to Alvin Newman. Depo. Patrick Sauers at 164, 169. Thus, SJD concludes that because Alvin Newman was under Drake's exclusive control, Newman was a loaned servant of Drake and therefore, the liability for the acts of Newman is that of Drake.
 {¶ 30} In the Halkias case, the Court cited 35 American Jurisprudence, 970, Section 541, which provides as follows:
 {¶ 31} "`Indeed, as a general proposition, if one person lends his servant to another for a particular employment, the servant, for anything done in that employment, is dealt with as the servant of the one to whom he has been lent, although he remains the general servant of the person who lent him. An employer is not liable for injury negligently caused by a servant if the latter is not at the time in the service of the employer, but in the special service of another, although the question of liability is ultimately dependent upon the determination of who has the power to control and direct at the exact time of the act in question. In other words, in determining whether in respect of a particular act, a servant, in the general employment of one person, who has been loaned for the time being to another is the servant of the original employer or the person to whom he has been loaned, the test is whether in the particular service which he is engaged to perform, the servant continues liable to the direction and control of his general employer or becomes subject to that of the person to whom he is lent, — whether the latter is in control as proprietor so that he can at any time stop or continue the work and determine the way in which it is to be done, with reference not only to the result reached but to the method of reaching it.'" Halkias at 151-152.
 {¶ 32} Here, Alvin Newman was loaned to Drake to perform clean-up work. Deposition testimony establishes that the field supervisor, Pat Sauers, directed Newman as to the floors that needed clean-up work. Further, there was a specific manner in which the clean-up was to be performed. According to Joseph Duale, smaller debris was placed down a discharge chute that existed on the outside of the building. The discharge chute had an opening on each floor and extended vertically down the outside of the building to a dumpster located in the alley behind the building. Debris that was too big to place down the chute were to be manually carried down to the dumpster. Depo. Joseph Duale at 19-20.
 {¶ 33} Thus, although Newman was an experienced laborer and had previously worked at this construction site, the record establishes that Drake directed the manner in which debris was to be removed from the building. Because Drake instructed Newman concerning the specific floors to be cleaned and the manner in which the debris was to be removed, we find Newman was a loaned servant to Drake at the time of the fatal injury to Carrico.
 {¶ 34} Accordingly, the trial court did not err when it granted SJD's motion for summary judgment.
 {¶ 35} Drake's First and Second Assignments of Error are overruled.
 III {¶ 36} In its Third Assignment of Error, Drake contends the trial court erred when it granted SJD's motion for summary judgment because a genuine issue of fact exists concerning whether a dual agency relationship existed involving SJD and Drake. We disagree.
 {¶ 37} The record indicates that Drake did not raise this argument before the trial court and is doing so for the first time on appeal. Such arguments are barred by the doctrine of waiver for failure to raise these arguments before the trial court. "It is well established that a party cannot raise any new issues or legal theories for the first time on appeal." Dolan v.Dolan, Trumbull App. Nos. 2000-T-0154 and 2001-T-0003, 2002-Ohio-2440, at ¶ 7, citing Stores Realty Co. v. Cleveland
(1975), 41 Ohio St.2d 41, 43. "Litigants must not be permitted to hold their arguments in reserve for appeal, thus evading the trial court process." Mark v. Mellott Mfg. Co., Inc. (1995),106 Ohio App.3d 571, 589.
 {¶ 38} Drake's Third Assignment of Error is overruled.
 Cross-Appeal I {¶ 39} In its First Assignment of Error on cross-appeal, SJD maintains the trial court erred when it signed the July 27, 2005 judgment entry. SJD specifically challenges the trial court's finding that it was performing ongoing operations for Drake at the time of the accident. SJD argues that it was not a party to the trial court's bench trial and therefore, could not be bound by the trial court's judgment entry that makes this finding.
 {¶ 40} The judgment entry at issue in this assignment of error states as follows:
 {¶ 41} "This matter came on for bench trial this 18th day of July 2005. Upon due consideration based upon the evidence presented, the transcripts filed in this matter, the pleadings of the parties, and the arguments of counsel, the Court finds as follows:
 {¶ 42} "1. The Court finds that the Defendant, Drake Construction, is liable for the negligent conduct of Alvin Newman dropping the stud out the third floor window and striking Randy Carrico in the head. Therefore, enters judgment in favor of Plaintiff and against Drake in the amount of $1,000,000.
 {¶ 43} "2. The Court finds that at the time of this accident, there were ongoing operations performed for Drake Construction by SJD.
 {¶ 44} "3. The Court further finds that Mr. Carrico's injuries arose out of Novak and Son's ongoing operations performed for Drake Construction.
 {¶ 45} "4. Costs to the Defendant, Drake Construction Company."
 {¶ 46} SJD argues that having been granted summary judgment, it was no longer a party to the action when the trial court filed the judgment entry on July 27, 2005. SJD expresses concern that Drake may use the language, in the July 18, 2005 judgment entry, to force SJD to repay Drake for some of the money it expended in settling Carrico's claims.
 {¶ 47} We acknowledge this concern. However, SJD's concern over the potential future assertion of res judicata, with respect to the trial court's finding, is not ripe for review because no case in controversy now exists.
 {¶ 48} For this reason, we dismiss SJD's cross-appeal.
 {¶ 49} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
By: Wise, P.J.
Edwards, J., concurs.
Hoffman, J., concurs separately.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
Costs assessed to Appellant Drake.