DECISION AND JOURNAL ENTRY
Appellant, Artglo Sign Company ("Artglo"), appeals the decision of the Lorain County Court of Common Pleas. We affirm.
 I.
In 1996, Artglo was pursuing a contract with NAPA auto parts stores to supply NAPA with a Parts Finder kiosk. Apparently, the goal was to place at least one kiosk in each of NAPA's approximately 7,000 stores. Artglo contacted Circuit Solutions, Inc. ("CSI") about supplying some of the components for the kiosks, including the central processing unit or CPU. In October 1996, Artglo placed a purchase order with CSI for a minimum of 300 units, and CSI began assembling the units and shipping them to Artglo. At Artglo, CSI's units were placed in the kiosks along with various components provided by other companies. After CSI had delivered approximately 188 units,[1] Artglo terminated its relationship with CSI, claiming that CSI was producing a substandard product which continually failed in the field. Specifically, Artglo complained about the manner in which the motherboard was attached to its container and averred that because the motherboard was improperly secured, it jostled around causing physical and electronic damage to the CPU. CSI countered that the units it produced functioned properly when they left CSI and when they arrived at Artglo, and that any malfunctions were due to Artglo's poor shipping practices in sending the completed kiosks to NAPA stores. Representatives for CSI testified that they made suggestions to Artglo regarding shipping the completed kiosks, but that, to their knowledge, none of these recommendations were ever implemented. After terminating its relationship with CSI, Artglo placed a purchase order with Assured Systems Development, Inc. ("ASD") for 155 units similar to those provided by CSI in September 1997.
On June 25, 1997, CSI filed a complaint in the Lorain County Court of Common Pleas for breach of contract, seeking to recover monetary damages for the units which were delivered to Artglo but were not paid for and for the twelve units that were prepared, but for which delivery and payment were refused by Artglo. CSI also sought to recover lost profits. Artglo filed a counterclaim, alleging in part that CSI had breached the implied warranty on the goods. A jury trial was held, commencing on April 17, 2000. In a verdict journalized on April 20, 2000, the jury found in favor of CSI and awarded it $103,766.73 in damages. This appeal followed.
 II.
Artglo asserts five assignments of error. We will discuss each in due course.
 A. Third Assignment of Error The Court above erred to the detriment of the Defendant when admitting Plaintiff's Exhibit 13 over the objection of the Defendant.
 Artglo argues that the trial court should have excluded CSI's Exhibit 13 because no foundation for the underlying loss of profit was shown. Further, Artglo contends that the admission of Exhibit 13 was prejudicial because "it was self-serving, no foundation for the underlying loss of profit was shown, and it invited speculation." We disagree.
"The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio StateMed. Bd. (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
Exhibit 13 was an invoice, dated June 3, 1997, listing CSI's lost profits as $325 per unit. CSI sent this invoice to Artglo. At trial, Richard Stone, president of CSI, testified that this document was kept in the ordinary course of business by CSI, see Evid.R. 803(6), and that the figure of lost profits ($325 per unit) was calculated by subtracting the cost of labor and materials from the selling price. Accordingly, we cannot say that the trial court abused its discretion by admitting Exhibit 13 into evidence. Artglo's third assignment of error is overruled.
 B. First Assignment of Error The Court below erred in allowing Count Four of the Complaint to go to the jury and failing to sustain Defendant's Motion To Dismiss at the end of the Plaintiff's case, and Defendant's motion for a directed verdict on Count Four in Defendant's favor at the end of the Defendant's case.
 Artglo argues that the trial court erred in not granting a directed verdict for Artglo regarding CSI's claim for compensation for the units in excess of the 300 unit minimum because there was no evidence that the condition precedent, i.e. additional orders from NAPA, occurred. We disagree.
Civ.R. 50(A)(4) provides that when a party moves for a directed verdict,
 and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
 Upon review, this court must determine whether the evidence was such that reasonable minds could only find in favor of the moving party on the issue. Helmick v. Republic-Franklin Ins. Co. (1988), 39 Ohio St.3d 71, 74-75.
Generally, courts presume that the intent of the parties can be found in the written terms of the contract. Shifrin v. Forest City Ent., Inc. (1992), 64 Ohio St.3d 635, 638. If, however, the language of the contract is unclear or ambiguous, "extrinsic evidence [will] be considered in an effort to give effect to the parties' intentions." Id. at syllabus. In Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, paragraph two of the syllabus, the Supreme Court set forth a test for determining whether a term or terms in a contract are ambiguous: "[c]ommon words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." Thus, if a contract is unambiguous, the language of the contract controls and "[i]ntentions not expressed in the writing are deemed to have no existence and may not be shown by parol evidence."Aultman Hosp. Assn. v. Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51,53.
In its October 1996 purchase order from CSI, Artglo placed a "Blanket Purchase Order for a minimum of 300 units, based on [Artglo's] commitment from NAPA." (Emphasis added.) We find that the emphasized language may be given two different reasonable interpretations, and therefore, ambiguity exists, permitting the consideration of extrinsic evidence by the jury to determine the intent of the parties. The phrase "for a minimum of 300 units" could be interpreted to mean that Artglo only had to purchase 300 units from CSI to fulfill its obligation under the contract; however, it could also be interpreted to be the minimum order under a requirements contract. Thus, as the terms of the contract were ambiguous, the jury had to determine the intent of the parties by considering extrinsic evidence. At trial, Richard Stone, the president of CSI, testified that CSI understood that any orders beyond the first 300 were to come from CSI, and that he believed Artglo when its representatives told him that Artglo expected to sell 7,000 kiosks to NAPA and that CSI would be supplying the CPUs for those kiosks. Moreover, Grant Beavers, president of Artglo, testified that after terminating its relationship with CSI, Artglo agreed to purchase 155 units from ASD — one hundred of which would complete the 300 unit minimum order from CSI and fifty-five units would be in excess of the 300 minimum order under the CSI contract. Therefore, construing the evidence in a light most favorable to CSI, as we must do in reviewing a motion for a directed verdict, we conclude that a directed verdict would have been inappropriate as reasonable minds could reach different conclusions on the issue of compensation for the units in excess of the 300 minimum order for CSI. Artglo's first assignment of error is overruled.
 C. Second Assignment of Error The Court erred in failing to sustain the Motion To Dismiss to [sic] Count One made at the end of the Plaintiff's case in so far as it related to lost profits for non-manufactured units, and in overruling Defendant's motion for a directed verdict at the end of Defendant's case in so far as it related to loss [sic] profits for non-manufactured units to go to the jury.
 Artglo avers that the trial court erred in overruling its motion for a directed verdict, as CSI failed to establish its lost profits with reasonable certainty for the non-manufactured units. We disagree.
In order for a plaintiff to recover lost profits in a breach of contract action, the plaintiff must show that "(1) [the] profits were within the contemplation of the parties at the time the contract was made, (2) the loss of profits [wa]s the probable result of the breach of contract, and (3) the profits are not remote and speculative and may be shown with reasonable certainty." Charles R. Combs Trucking, Inc. v.International Harvester Co. (1984), 12 Ohio St.3d 241, paragraph two of the syllabus. The Ohio Supreme Court further explained that "the amount of the lost profits, as well as their existence, must be demonstrated with reasonable certainty." Gahanna v. Eastgate Properties, Inc. (1988), 36 Ohio St.3d 65, syllabus.
At trial, CSI substantiated its claim for lost profits through the testimony of Richard Stone and the admission of Exhibit 13. Exhibit 13 was an invoice, dated June 3, 1997, that CSI sent to Artglo, which listed the lost profit as $325 per unit. Richard Stone testified that the lost profits for each unit was $325 and explained that he arrived at this figure by subtracting the cost of the materials and labor from the selling price of the units — $1023.50. Although Artglo cross-examined Richard Stone as to how he arrived at the figure for lost profits of $325 per unit, Artglo did not present any additional evidence to rebut CSI's claim of $325 per unit. Accordingly, we conclude that in viewing the evidence in a light most favorable to CSI, the evidence showed that CSI demonstrated its lost profits with reasonable certainty, and therefore, the trial court did not err in allowing the issue of lost profits to go to the jury. Artglo's second assignment of error is overruled.
 D. Fifth Assignment of Error The verdict was against the manifest weight of the evidence.
 In its fifth assignment of error, Artglo argues that the jury's verdict was against the manifest weight of the evidence. We disagree.
When the manifest weight of the evidence is challenged, "[a]n appellate court conducts the same manifest weight analysis in both criminal and civil cases." Ray v. Vansickle (Oct. 14, 1998), Lorain App. Nos. 97CA006897/97CA006907, unreported, at 3.
 "The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered."
 State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." Karches v. Cincinnati
(1988), 38 Ohio St.3d 12, 19. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." Id.
After carefully reviewing the record and for the reasons discussed above, we conclude that the jury did not clearly lose its way and act against the manifest weight of the evidence in finding that Artglo had breached its contract with CSI and in awarding CSI $103,766.73 in damages, including lost profits. Accordingly, Artglo's fifth assignment of error is overruled.
 E. Fourth Assignment of Error The Court below erred in refusing to give the Defendant's proffered instruction on "implied warranty" to the jury.
 In its fourth assignment of error, Artglo contends that the trial court erred in refusing to give its version of the jury instruction for implied warranty of fitness for a particular purpose. Specifically, Artglo complains that the trial court erred by omitting a portion of its proposed instruction, which was based on 3 Ohio Jury Instructions (1996), Section 362.15.[2] We disagree.
This court has previously stated that "[a] trial court is not required to give a proposed jury instruction in the precise language requested by its proponent, even if the proposed instruction states an applicable rule of law. Instead, the court has the discretion to use its own language to communicate the same legal principles." Henderson v. Spring RunAllotment (1994), 99 Ohio App.3d 633, 638. Thus, absent an abuse of discretion, this court must affirm the trial court's language of the jury instructions. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons, 66 Ohio St.3d at 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
R.C. 1302.28 provides that "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is * * * an implied warranty that the goods shall be fit for such purpose." In the present case, the trial court gave the following instruction on an implied warranty of fitness for a particular purpose:
 An implied warranty of fitness for a particular purpose is created if you find: (1) that the plaintiff had reason to know the intended to use of the computers; (2) that the plaintiff had reason to know that the defendant was relying on the plaintiff to furnish the computers which would perform the intended use; and (3) that the defendant did, in fact, rely on the plaintiff's skill and judgment in furnishing computers.
 The foregoing instruction follows 3 Ohio Jury Instructions (1996), Section 362.15, on implied warranty of fitness for a particular purpose, but omits the following portion of 3 Ohio Jury Instructions (1996), Section 362.15:
 The buyer did, in fact, rely on the seller's skill and judgment in furnishing (describe goods). The buyer need not have told the seller that the buyer intended to use the (describe goods) to (describe particular purpose); nor is the buyer required to have told the seller that the buyer was relying on the seller's skill and judgment to furnish the (describe goods) to (describe particular purpose); it is sufficient that the seller have reason to know these facts.
 Artglo asserts that it was error for the trial court to omit this portion of the Ohio Jury Instructions; however, "[t]he instructions found in Ohio Jury Instructions are not mandatory," but rather, "are recommended instructions based primarily upon case law and statutes[.]" State v. Martens (1993), 90 Ohio App.3d 338, 343. Furthermore, the trial court's instruction on implied warranty of fitness for a particular purpose is a correct and complete statement of the law. See R.C. 1302.28. As such, we cannot say that the trial court abused its discretion in giving the foregoing charge to the jury. Artglo's fourth assignment of error is overruled.
 III.
Appellant's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
 —
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ WILLIAM G. BATCHELDER
BAIRD, J., SLABY, J. CONCUR
[1] David Stone, vice president of CSI, testified that at the time Artglo terminated its relationship with CSI, CSI had shipped a total of 188 units to Artglo, and had produced another twelve units which were ready to be shipped.
[2] Artglo argues that it was error for the trial court to omit the following portion of its proffered instruction on implied warranty of fitness for a particular purpose:
 The buyer need not have told the seller that the buyer intended to use the computers, for the purpose to ship them across the country by common carrier, nor is the buyer required to have told the seller that the buyer was relying on the seller's skill and judgment to furnish the computers to ship them across the country by common carrier.
 We do not reach the issue of whether Artglo's proposed jury instruction was proper, as we find that the trial court's instruction on implied warranty of fitness for a particular purpose was a correct and complete statement of the law.