OPINION
Jo Blackburn Karasek was found guilty of assault on a corrections officer, with an accompanying cause harm specification, by a jury in the Montgomery County Court of Common Pleas. The trial court sentenced her to an indefinite prison term of eighteen months to five years but suspended her sentence and placed her on five years of probation. She was also fined $500 and ordered to pay court costs and $50 per month for the cost of her probation supervision. Karasek appeals from this conviction and sentence.
The state's evidence established the following facts.
On January 22, 1996, Karasek was arrested at the Dayton-Montgomery County Courts Building by court security officers on a contempt of court warrant issued by Judge V. Michael Brigner. She was escorted to the security office where she refused to cooperate and repeatedly tried to leave. Karasek would not remain seated, and when one of the officers physically placed her back in a chair, she hit her head on a computer monitor. After refusing treatment for the injury to her head, she was taken to the Montgomery County Jail.
While at the jail, Karasek continued to be uncooperative and became agitated. Due to her conduct, she was escorted to a holding cell where she pounded on the door with a shoe and demanded to be released. She was eventually calmed down sufficiently that the officers could complete the book-in process.
Following her arraignment, Karasek was released on her own recognizance. However, she was taken back to the county jail to complete the book-out process. She became agitated with the delay while in the waiting room and complained to Officer David Cook. Officer Cook told Karasek that he would check on the situation and placed her in a holding cell due to her disruptive behavior. She again began to pound on the door of the cell. When Officer Cook returned, he opened the cell to confirm Karasek's identity. She began to leave the cell. In addition to Officer Cook, Sergeant Robert Branch and Officer Janine Whittaker were also present. Officer Cook and Sergeant Branch instructed Karasek to return to the cell, and she refused. They then physically escorted her back into the cell. Before the two officers could exit the cell and close the door, Karasek kicked Officer Cook in the groin. This action was observed by both Sergeant Branch and Officer Whittaker. Officer Cook experienced pain for two years following the incident and was treated for post-traumatic stress disorder.
Karasek testified that she had believed she was free to leave when Officer Cook opened the door to her cell. She admitted that he had "signified" to her that she should go back into the cell, but she stated that she had been "exhausted" and in "emotional shock" She maintained that she had been "passively defend[ing]" herself against Officer Cook and Sergeant Branch. She testified that she "felt [her] leg go up, which [she] had never told it to do" but that she did not touch Officer Cook. She also stated that he had left the room with a smile on his face.
Karasek also called Heather Watson, another inmate at the jail that day, who testified that she had seen Karasek's leg come up but that it had not connected with anyone.
On February 27, 1996, Karasek was indicted on one count of felonious assault of a peace officer in violation of R.C. 2903.11(A)(1). This indictment was later amended to eliminate the peace officer designation. On November 13, 1997, Karasek was re-indicted, adding one count of assault on a correction officer with a cause harm specification in violation of R.C. 2903.13(A), (C)(2)(b). Karasek represented herself at trial, which began June 1, 1998. The jury found her not guilty of felonious assault, but guilty of assault on a corrections officer with a cause harm specification. The trial court sentenced her as described supra. Karasek filed a notice of appeal on September 2, 1998, and that appeal was assigned Case No. 17408. On October 6, 1998, Karasek moved the trial court to reconsider her conviction or grant her a new trial, and the trial court overruled that motion on November 20, 1998. Karasek filed a notice of appeal on December 14, 1998, and that appeal was assigned Case No. 17563. The two appeals were consolidated by this court on December 31, 1998.
Karasek raises seven assignments of error on appeal.
 APPELLANT'S CONVICTION FOR ASSAULT (CORRECTIONS OFFICER) IS BASED UPON INSUFFICIENT EVIDENCE.
Under this assignment of error, Karasek argues that there was insufficient evidence to support her conviction for assault on a corrections officer because she was not in custody subsequent to an arrest for a "crime or delinquent act."
Initially, we note the standard under which we review challenges to the sufficiency of the evidence:
 In reviewing a challenge to the sufficiency of the evidence, we must determine whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the state had proven the essential elements of the crime beyond a reasonable doubt.
 State v. Jenks (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492.
R.C. 2903.13 provides:
 (A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn.
* * *
 (C) Whoever violates this section is guilty of assault. Except as otherwise provided in division (C)(1), (2), or (3) of this section, assault is a misdemeanor of the first degree.
* * *
 (2) If the offense is committed in any of the following circumstances, assault is a felony of the fifth degree.
* * *
 (b) The offense occurs in or on the grounds of a local correctional facility, the victim of the offense is an employee of the local correctional facility * * *, and the offense is committed by a person who is under custody in the facility subsequent to the person's arrest for any crime or delinquent act * * *.
(Emphasis added). Karasek argues that contempt is not a "crime or delinquent act" under R.C. 2903.13(C)(2)(b). Therefore, according to Karasek, the state presented insufficient evidence to establish that she was in custody subsequent to her arrest for a crime.
The state argues that Karasek waived this argument by failing to move for acquittal at the close of the state's case-in-chief as required by Crim.R. 29. We agree with the state. Karasek not only failed to move for acquittal but also specifically stated to the trial court that she was waiving her right to do so. Thus, Karasek has waived any challenge to the sufficiency of the evidence in this appeal. See State v. Knapp
(Jan. 26, 2001), Montgomery App. No. 18457, citing State v. Roe (1989),41 Ohio St.3d 18, 535 N.E.2d 1351. However, we will still review Karasek's argument under plain error analysis pursuant to Crim.R. 52(B). See id., citing State v. Wickline (1990), 50 Ohio St.3d 114,552 N.E.2d 913. Plain error exists only where "it can be said that, but for the error, the outcome of the trial clearly would have been otherwise." Id., citing State v. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804. If Karasek is correct on her interpretation of the law, this standard would be met.
R.C. 2903.13(C)(2)(b) requires that Karasek have been in custody pursuant to her arrest for a "crime." Thus, the issue that we must decide is whether criminal contempt is a crime within the meaning of R.C.2903.13(C)(2)(b). Several sections of the Revised Code provide guidance on this issue. R.C. 2901.03 provides:
 (A) No conduct constitutes a criminal offense against the state unless it is defined as an offense in the Revised Code.
 (B) An offense is defined when one or more sections of the Revised Code state a positive prohibition or enjoin a specific duty, and provide a penalty for violation of such prohibition or failure to meet such duty.
 (C) This section does not affect any power of the general assembly under section 8 of Article II, Ohio Constitution, nor does it affect the power of a court to punish for contempt or to employ any sanction authorized by law to enforce an order, civil judgment, or decree.
R.C. 2705.02 provides that "[a] person guilty of any of [a list of acts] may be punished for a contempt." However, this section does not "state a positive prohibition or enjoin a specific duty." It merely lists some acts that a court may punish as contempt. The Revised Code does not, in this section or in any other, define contempt as a crime. Furthermore, the fact that the supreme court has stated that "criminal contempt is a crime in every fundamental respect," Brown v. Executive 200, Inc. (1980), 64 Ohio St.2d 250, 252, 416 N.E.2d 610, quoting Bloom v.Illinois (1968), 391 U.S. 194, 201, 88 S.Ct. 1477, 1482, does not bring contempt within the term "crime" as used and defined by the legislature. Therefore, it is questionable whether criminal contempt is a "crime" within the meaning of R.C. 2903.13(C)(2)(b). In such situations, "[s]ections of the Revised Code defining offenses or penalties shall be strictly construed against the state and liberally construed in favor of the accused." Thus, construing these sections liberally in favor of Karasek, we conclude that criminal contempt is not a crime within the meaning of R.C. 2903.13(C)(2)(b). Because we find that criminal contempt does not constitute a "crime or delinquent act" within the meaning of R.C. 2903.13(C)(2)(b), we conclude that the state failed to present sufficient evidence to establish this element of assault on a corrections officer. Thus, Karasek's conviction for assault on a corrections officer was plain error. However, the state did present sufficient evidence of the offense of assault. Thus, we remand this matter to the trial court to enter judgment of conviction of assault, a first degree misdemeanor, and resentence Karasek accordingly.
Karasek's first assignment of error is sustained.
 APPELLANT'S CONVICTION FOR ASSAULT (CORRECTIONS OFFICER) IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Under this assignment of error, Karasek argues that her conviction was against the manifest weight of the evidence. In particular, she points to her testimony, the testimony of Watson, and the testimony of Officer Cook that he did not believe that Karasek had planned to kick him. We have already held that the state presented insufficient evidence to support Karasek's conviction for assault on a corrections officer. Therefore, we will consider whether a conviction for assault was against the manifest weight of the evidence.
When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541, citing State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." Martin, supra, at 175.
This case essentially pits the state's version of events against Karasek's. As for Karasek's reliance on Officer Cook's statement that "[he didn't] think [she] planned it," there is a difference between planning to kick him and "knowingly" kicking him. Furthermore, whether Karasek "knowingly" kicked Officer Cook depended upon her state of mind at the time of the crime. Officer's Cook's perception of her state of mind was not of primary concern. Thus, the jury could have determined that Karasek "knowingly" kicked Officer Cook notwithstanding his testimony. The state presented substantial evidence in favor of the conviction, and the jury clearly believed the state's version of events. The manifest weight of the evidence does not compel a different result.
Karasek's second assignment of error is overruled.
 THE TRIAL COURT ERRED IN NOT DISMISSING ONE OF THE TWO INDICTMENTS OR REQUIRING THE PROSECUTION TO ELECT ONE OF THE TWO INDICTMENTS.
Under this assignment of error, Karasek argues that the trial court erred in proceeding on both indictments. However, she cites to no authority to support her argument.
There was nothing to prohibit the prosecution in this case from charging Karasek with both felonious assault and assault on a corrections officer and proceeding on both charges. See, e.g., R.C. 2941.04 ("The prosecution is not required to elect between the different offenses or counts set forth in the indictment or information."). Even where two offenses are "allied offenses of similar import," in which case the defendant may only be convicted of one offense, the state is permitted to indict the defendant on both. In this case, the two offenses are not allied offenses of similar import. Therefore, the state was permitted to proceed on both charges. The fact that the charges were brought in two separate indictments does not change matters. Thus, the trial court did not err in refusing to dismiss one of the indictments or to require the state to proceed on only one of the indictments.
Karasek's third assignment of error is overruled.
 THE TRIAL COURT ERRED IN PREPARING AND ADMITTING INTO EVIDENCE ITS OWN COURT'S EXHIBIT 1.
Karasek argues that the trial court erred when it prepared a chart listing the elements of felonious assault and assault on a corrections officer. The trial court showed the chart to the jury during jury instructions and allowed the jury to have the chart during deliberations because the court believed that the jury might be confused regarding the elements of the two offenses. Karasek argues that, because the state had prepared a similar chart during closing arguments, the trial court's chart "was a clear visible indication that the trial court agreed with appellee's trial counsel." Karasek further argues that the chart does not mention reasonable doubt or the possibility of a not guilty verdict.
The state makes several arguments in response. First, it argues that Karasek waived her right to challenge the jury instructions by failing to object before the jury retired to consider its verdict as required by Crim.R. 30(A). However, the record reveals that Karasek did object to the chart. Therefore, we find that Karasek did not waive this argument.
However, the trial court did not err in preparing the chart for the jury. A trial court is not prohibited from reducing a part of its instructions to writing and sending it with the jury. See State v.Whitmeyer (1984), 20 Ohio App.3d 279, 281, 485 N.E.2d 1055, overruled by implication on other grounds in Helmick v. Republic-Franklin Ins. Co. (1988), 39 Ohio St.3d 71, 529 N.E.2d 464. In this case, the trial court concluded that the jury might be confused as to the elements of felonious assault and assault of a corrections officer and therefore reduced those elements to writing. There was nothing about the court's exhibit that favored the prosecution over the defense. On the contrary, the record does not reveal any partiality on the part of the trial court. During its oral instructions to the jury, the court clearly discussed the concept of reasonable doubt and made clear that Karasek was innocent until proven guilty. Furthermore, there is no reason to assume that Karasek was prejudiced. Prejudice has been found where a jury might tend to overemphasize the portion of the instructions submitted. See id. Karasek has failed to explain how she could have been prejudiced by the jury's overemphasizing the elements of the offenses. She merely asserts that she was prejudiced. We decline to presume prejudice based solely upon Karasek's bald assertion. Indeed, the fact that the jury found her not guilty of felonious assault supports the conclusion that the chart may have been beneficial to Karasek rather than prejudicial. Therefore, the trial court did not err in preparing the chart and allowing the jury to have it in their deliberations.
Karasek's fourth assignment of error is overruled.
 THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY ON THE ISSUE OF ACCIDENT.
Karasek argues that the trial court erred in refusing to instruct the jury regarding accident.
Under Crim.R. 30(A), Karasek was required to submit her proposed jury instructions in writing. She does not dispute that she failed to do so. Furthermore, Crim.R. 30(A) provides that any error involving the failure to give instructions is waived if the party does not object before the jury retires to consider its verdict. Karasek did not object before the jury retired to consider its verdict. In fact, when asked by the judge if there were any "errors, omissions or anything" with the jury instructions, she answered, "Uh . . . none that I noted." Thus, Karasek waived all but plain error with respect to the jury instructions.
Plain error exists only where "it can be said that, but for the error, the outcome of the trial clearly would have been otherwise." Knapp, supra, citing Long, supra. There is no evidence that the outcome of the trial would have been different had the judge given an instruction regarding accident. The judge did clearly instruct the jury regarding the definition of "knowingly," and in fact the jury twice requested further definition of the word. A specific instruction that accident negates knowledge would not have clearly produced a different result. Therefore, we find that it was not plain error for the trial court not to give an instruction regarding accident.
Karasek's fifth assignment of error is overruled.
 THE TRIAL COURT ERRED IN ORDERING APPELLANT TO PAY THE ENTIRE COSTS OF THE PROSECUTION.
Under this assignment of error, Karasek argues that the trial court erred in ordering her to pay all of the costs associated with her prosecution, rather than just those associated with the charge for which she was found guilty. The state concedes that this is a reasonable interpretation of R.C. 2947.23[1] and R.C. 2949.091.[2] See Statev. Powers (1996), 117 Ohio App.3d 124, 128, 690 N.E.2d 32. The state further concedes that the record is not clear regarding the costs that Karasek was ordered to pay and asks that we remand this matter to the trial court for a determination of the appropriate amount of court costs to be assessed against Karasek. We agree with this interpretation and find that remand is appropriate.
Karasek's sixth assignment of error is sustained.
 THE TRIAL COURT ERRED IN ORDERING APPELLANT TO PAY A FINE OF $500.00 AND $50.00 PER MONTH PROBATION FEE FOR SUPERVISION COSTS.
In our disposition of the first assignment of error, we held that the state had presented insufficient evidence to support a conviction for assault on a corrections officer but that the evidence was sufficient to support a conviction for assault. Thus, we remanded the case to the trial court to enter judgment against Karasek for assault and to resentence her accordingly. Thus, this assignment of error is rendered moot and is overruled on that basis.
The judgment of the trial court will be reversed and remanded for further proceedings consistent with this opinion.
BROGAN, J. and GRADY, J., concur.
[1] R.C. 2947.23 provides:
 In all criminal cases, including violations of ordinances, the judge or magistrate shall include in the sentence the costs of prosecution and render a judgment against the defendant for such costs. If a jury has been sworn at the trial of a case, the fees of the jurors shall be included in the costs, which shall be paid to the public treasury from which the jurors were paid.
[2] R.C. 2949.091(A) provides, in pertinent part:
 The court, in which any person is convicted of or pleads guilty to any offense other than a traffic offense that is not a moving violation, shall impose the sum of eleven dollars as costs in the case in addition to any other court costs that the court is required by law to impose upon the offender.