SYLVANIA SAVINGS BANK CO., APPELLEE, v. SUNBURST CAR CARE CENTERS, INC. ET AL., APPELLANTS.

(No. L-83-022—Decided July 8, 1983.)

Mr. *Norman E. Bischoff,* for appellee.

Mr. *Byron S. Choka,* Mr. *Louis J. Hattner* and Mr. *Thomas G. Zraik,* for appellants.

DOUGLAS, J. This matter comes to this court on appeal from judgment of the Court of Common Pleas of Lucas County, Ohio. Said court rendered final judgment against appellants on two notes, granted foreclosure on a real estate mortgage and ordered certain real estate sold. From that judgment appellants appeal, urging three assignments of error:

"1. The trial court erred in overruling the motion of defendants-appellants, the Swolskys and Tonkels, for judgment in their favor at the close of plaintiff-appellee's case in chief.

"2. The trial court erred in finding that defendants-appellants, the Swolskys and Tonkels, received actual notice of the default.

"3. The trial court erred in finding that plaintiff-appellee complied with the notice terms of its agreement with defendants-appellants, the Swolskys and Tonkels, by allegedly sending the January

30, 1980, notice letter to the purported business address of the real estate agent for these defendants-appellants."

Hyman R. Swolsky, Martha M. Swolsky, Dan Tonkel and Selma Tonkel were partners in an Ohio partnership known as Tonkel Swolsky Enterprises (hereinafter "partnership"). Partnership owned a parcel of real estate upon which Charles Leslie, Jr. and Marilyn Leslie (hereinafter "Leslies") sought to build a car wash to be operated through the Leslies' corporation, Sunburst Car Care Centers, Inc. (hereinafter "corporation"). Partnership and Leslies are appellants herein. On June 22, 1978, partnership entered into a lease agreement with corporation for the lease of the parcel of real estate owned by partnership. On this same date (June 22, 1978), Leslies personally executed and delivered to appellee, Sylvania Savings Bank Co. (hereinafter "appellee"), one promissory note in the amount of $90,000 and, on November 21, 1979, another note in the amount of $26,717.28. Corporation was a co-maker on each note. As security for the $90,000 note the appellee required partnership (Swolskys and Tonkels) to execute and deliver to appellee a mortgage on the parcel of real estate owned by partnership. It is this mortgage that appellee seeks to foreclose.

As part of the entire transaction, appellee required that the lease agreement between partnership and corporation be assigned to appellee, and this was done on the same date (June 22, 1978), as the lease was signed and the transaction closed. In consideration of partnership giving the mortgage to appellee, partnership required that partnership be given notice by appellee of any default in payment by Leslies and corporation on the $90,000 note and, further, that partnership be given sixty days to cure any such default. The obvious reason for this was to enable partnership to protect its interest in the real property. Appellee agreed to this condition and, again, on the June 22 date,

issued a letter to partnership confirming the understanding. This letter was addressed to partnership in care of one Joe Swolsky at 1806 Madison-Suite #306, Toledo, Ohio.

Subsequently (and it is impossible from the record to tell exactly when, as *no* evidence was presented by appellee as to the precise date of default, nor does appellee's complaint allege such specific date), default apparently occurred, and on June 26, 1981, appellee filed its complaint for judgment on both notes and foreclosure of the mortgage. Corporation presented no defense. Leslies filed an answer denying default and denying personal liability, but presented no defense at trial. Partnership answered alleging that no notification of any default was sent to partnership in accordance with, and as required by, the agreement between appellee and partnership. At trial, partnership defended on this ground and all of the documents pertinent to the transaction were admitted into evidence. The court has thoroughly reviewed those documents and the entire transcript of proceedings and finds, therein, the information necessary to determine this appeal.

Partnership's Exhibit B is the lease agreement between partnership and corporation. That document, in its first paragraph, says:

"THIS LEASE was made and entered into this 22 day of June, 1978, by and between the TONKEL SWOLSKY ENTERPRISES, an Ohio Partnerhsip [*sic*], the address of which is 2350 Woodville road, Oregon, Ohio 43616 ('Landlord'), and SUNBURST CAR CARE CENTER, INC., who [*sic*] address is 5700 Southwyck Blvd., Toledo, Ohio ('Tenant')."

Article twenty-four of the agreement says:

"All notices required herein shall be in writing and shall be mailed by certified or registered mail, addressed to Landlord at 2350 Woodville Road, Oregon, Ohio 43616 or to Tenant at 5700 Southwyck

Blvd., Toledo, Ohio 43614, and such posting and the date thereof shall be sufficient proof hereunder of delivery of the notice and the date of delivery, which shall be the date of posting. Any party desiring notice to be changed to an address different from that given above shall make known such desire in writing to the other party."

Partnership's Exhibit C is the assignment of the lease agreement to appellee and says, in part, the following:

"* * * and TONKEL SWOLSKY ENTERPRISES, an Ohio Partnership whose address is 2350 Woodville Road, Oregon, Ohio 43616 as Lessor, * * *."

Both of these documents were in the possession of appellee on June 22, 1978, when appellee issued, under the same date, the following letter:

"Mr. Hyman R. Swolsky

"Mr. Dan Tonkel

"c/o Mr. Joe Swolsky

"1806 Madison — Suite #306

"Toledo, Ohio 43624

"Re:  1463-69 Towers Road

"Gentlemen:

"The Sylvania Savings Bank Company agrees to notify you in the event the loan which Sunburst Car Care Centers, Inc., has with us on the above parcel is in default. *We shall give you sixty days to cure said default after such notice in accordance with your lease with Sunburst.*

"Very truly yours,

"/s/ Paul W. Zeitner,

"Vice-President"

(Emphasis added.)

This letter was in accordance with the agreement between appellee and partnership and, further, in recognition of Article Eleven, Section 9, of the lease agreement (of which appellee was assignee and in possession of at the time of closing) which provided, in part, as follows:

"Loan documents shall provide that in the event of Tenants [sic] default in the performance of any of the obligations denoted in such Loan documents, notice of such default shall be given by the holder of the Mortgage to Landlord and, without the requirement for the payment of penalty or the acceleration of payments, Landlord shall have not less than sixty (60) days after receipt of such notice to commence to remedy such default. * * *"

Thus it is clear from the face of the documents that partnership was entitled to notice of any default and that notice was to be given, as provided for in the documents and confirmed by appellee's letter, to partnership at a specific address.

Partnership (and Leslies by adoption), in their first assignment of error, contend that appellee, in its case in chief, presented no direct evidence as to any default and no evidence of *notice* of any default being given to partnership, as required by the parties' agreement. While appellee presented an official of the bank and has admitted into evidence the notes, mortgage, security agreement and financing statement involved in the transaction, there was *no* evidence presented (except maybe by innuendo) that any notice was given or that the notes were in default. Thus, partnership was quite right in making its motion to dismiss and that motion should have been granted by the trial court as appellee had failed, at that point, to prove two essential elements of its case, to wit: actual default and the sending of notice as required by agreement. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261]. The converse, however, is also true that where an essential element of a case is not proven, then any judgment finding liability, notwithstanding such failure, should be reversed.

Thus it would appear that appellants' first assignment of error should be well-

taken. That, however, is not the case in the matter now before us on appeal. Instead of standing on its motion (overruled by the trial court), partnership proceeded to present its defense of no notice. During the course of this defense, evidence was obtained as to the default (although still no specific date is given) and subsequently, on rebuttal, appellee proved that a letter was sent by appellee which, appellee contends, satisfied the notice requirement. When partnership made its motion at the conclusion of appellee's case, it had the option of either standing on its exception to the overruling of the motion by the trial court or proceeding with its defense. If, as here, a party in such a position proceeds with a defense, introducing evidence on its own behalf, that party waives its right to rely on its original motion. *Halkias* v. *Wilkoff Co.* (1943), 141 Ohio St. 139, at 146 [25 O.O. 257]; *Haines* v. *Public Finance Corp.* (1966), 7 Ohio App. 2d 89, at 90-91 [36 O.O.2d 198]. Also, for a general discussion of the problem (in the criminal context which was taken from the civil rule) see concurring opinion by Douglas, J., in *State* v. *Carpenter* (May 20, 1983), Lucas App. No. L-82-339, unreported. Accordingly, appellants' first assignment of error is not well-taken.

Appellants' second and third assignments will be discussed together as the same question is presented by both, to wit: Did partnership receive notice (actual or constructive) from appellee as to the default by Leslies and corporation?

Appellee argues that notice was given in accordance with the agreement and that notice was by letter dated January 30, 1980. The letter was admitted into evidence as appellee's Exhibit 7. From the face of the letter it can be determined that, if sent, (and there is some dispute about that) the letter was addressed to partnership at 1806 Madison-Suite #306, Toledo, Ohio. This is clearly *not* the address of partnership to which notices were to be sent as set forth in the agreement of lease, lease assignment and ap-

pellee's letter, all *supra*. Appellee argues, however, that the letter was sent to the same address and the same person that the original letter of agreement regarding notice was sent to and that appellee had received no communication from anyone that there had been a change of address of partnership.

Appellee's argument misses the mark. Appellee had specifically agreed to send notice to partnership at an address on Woodville Road. Appellee's own document shows that such notice was *not* sent to that address. Appellee further argues, however, that Joe Swolsky was the agent of partnership and thus the partnership had constructively received notice. By direct testimony Joe Swolsky denied ever being employed by partnership as an agent or otherwise. This was corroborated by partnership through Hyman Swolsky. No evidence to the contrary was presented.

Since the required notice was not sent to the address agreed to and partnership denied ever receiving any notice before the filing of appellee's complaint, partnership's Assignments of Error Nos. 2 and 3 are well-taken.

The trial court granted foreclosure against partnership. This portion of the trial court's judgment is reversed and vacated. Coming now to enter the judgment that the trial court should have made, partnership is given sixty days from the date of this entry to cure the default of Leslies and corporation on the $90,000 note. Since the only evidence as to the date of the default is appellee's letter of January 30, 1980, the parties are ordered to use that date for their computations as to what amount was needed to cure the default as of that date. The amount in default on January 30, 1980, plus ten percent annual interest (per terms of note) computed on a daily basis for each day (up to sixty days) until default is cured is the sum that partnership is required to pay to cure the default. If said default is not cured within this

prescribed period, then the judgment of the trial court, with regard to foreclosure against partnership, is ordered reinstated and the foreclosure shall become final.

Likewise, as to Leslies, the judgment of the trial court against them on the $90,000 note is reversed and vacated. If Leslies or partnership fail to cure the default within the period of time and in the manner detailed above, then the judgment of the trial court against Leslies is ordered reinstated and shall become final.

This then leaves the judgment of the trial court against Leslies on the $26,717.28 note. Leslies, by brief, have adopted the assignments of error as urged by partnership. This puts Leslies in the position of, in effect, not appealing the decision of the trial court as it pertains to the $26,717.28 note. This is so except in the case of our liberally construing the first assignment of error when Leslies could be heard to say that appellee did not prove default on this note in its case in chief and, therefore, the complaint should have been dismissed. The difficulty with this argument is that Leslies never moved to dismiss on this basis — only to strike the testimony of the witness of appellee. Obviously, if the testimony had been stricken, the case would have ended. The trial court chose not to strike and we will not disturb that evidentiary ruling. Had Leslies made a proper motion and stood on that motion as hereinbefore discussed, then we would have found the assignment of error well-taken and dismissed the complaint as to Leslies on both notes — there having, at that point, been no proof of default.

Accordingly, Leslies' Assignment of Error No. 1 is not well-taken, and we do not discuss Assignments of Error Nos. 2 and 3 as they do not pertain to Leslies except as previously ruled upon herein as to our holding with regard to partnership.

Having so decided, we recognize, however, that Leslies' $26,717.28 note is inextricably tied to and is part and parcel of this entire transaction. This is so because said note is secured by a security agreement and financing statement on the equipment necessary to make the car wash function. Therefore, in the interest of justice, we further order that execution on the judgment of the trial court against the property secured by the $26,717.28 note be stayed for the same sixty-day period given to partnership to cure the default on the $90,000 note. Further, partnership is given the right, if it elects to do so, to satisfy the amount due on said note or to cure the default, the sum to cure to be computed in accordance with the terms of the note and until the date when default is cured (not to exceed sixty days from the date of this entry). The formula for computing the amount to cure the defaults on the two notes is different as no notice was agreed to be given upon default on the $26,717.28 note. If partnership or Leslies fail to cure the default on the $26,717.28 note within the period of time and in the manner detailed above, then the judgment of the trial court against Leslies on the note is, likewise, reinstated and shall become final.

Finding that substantial justice has not been done the parties complaining, the judgment of the Court of Common Pleas of Lucas County is reversed and modified as hereinbefore set forth. This cause is remanded to said court for execution of the judgment of this court and for assessment of costs. Costs to be divided equally between appellee, partnership, and Leslies.

*Judgment reversed*
*and modified.*

CONNORS, P.J., and HANDWORK, J., concur.