CLARKE et al., Appellees,

v.

WARREN COUNTY BOARD OF COMMISSIONERS, Appellant.

[Cite as *Clarke v. Warren Cty. Bd. of Commrs.*, 150 Ohio App.3d 14, 2002-Ohio-6006.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

No. CA2001–12–110.

Decided Nov. 4, 2002.

Barrett & Weber, C. Francis Barrett and M. Michele Fleming, for appellees Richard M. Clarke, trustee, and Browning–Ferris Industries of Ohio, Inc.

Coolidge, Wall, Womsley & Lombard, John C. Chambers, Richard A. Talda and W. Kelly Lundrigan, for appellant.

Manley Burke, Timothy M. Burke, for amicus curiae Little Miami, Inc.

Phillips Law Firm, Inc., and John H. Phillips, for amici curiae Little Miami School District, Morrow Area Chamber of Commerce, Morrow Environmental Preservation Association, and William Brausch.

WALSH, Presiding Judge.

{¶ 1}   Defendant-appellant Board of Commissioners of Warren County, Ohio, appeals from a judgment of the Warren County Court of Common Pleas granting the request of plaintiffs-appellees, Richard Clarke and Browning–Ferris Industries, for declaratory judgment.  For the reasons that follow, we affirm the judgment of the trial court.

{¶ 2} Clarke is the owner of an 81–acre parcel of land in Union Township, Warren County, Ohio. The parcel is zoned R1, rural residence.[1] Since he purchased the land in 1985, Clarke has leased this parcel for agricultural use. Browning–Ferris Industries ("BFI"), owns an adjacent 51–acre parcel of land, which lies to the west of the Clarke parcel. The BFI parcel is situated between the Clarke parcel and the Bigfoot Run I sanitary landfill, owned by BFI. Bigfoot Run I was closed in 1999. It is now in monitoring status and is being developed as a wildlife area by BFI. In closing the landfill, BFI removed large amounts of soil from its adjoining parcel to cap Bigfoot Run I. As well, the BFI parcel contains service and haul roads, storage areas, fences, and monitoring wells, all necessary to the operation of Bigfoot Run I as a wildlife area.

{¶ 3} The Bigfoot Run I landfill remains zoned SD, solid waste district. The parcels to the west of Bigfoot Run I are zoned B2, general business zone, M2, heavy industry zone, and ME, mineral extraction zone. Both the BFI and Clarke properties are bounded to the south by the Little Miami River, and to the north and east sides by roadways. The land along these roads, except for the parcels to the west of Bigfoot I, is zoned R1, rural residence, just as the Clarke and BFI parcels.

{¶ 4} Upon the closure of Bigfoot Run I, BFI sought to purchase Clarke's parcel of land and, together with its adjoining parcel, develop the Bigfoot Run II sanitary landfill. BFI filed an application to rezone the parcels from R1 to SD so that the Bigfoot Run II landfill could be developed. The Board of Commissioners of Warren County ("board of commissioners") rejected the application.

{¶ 5} Appellees subsequently filed a complaint, seeking a declaration that the R1 zoning designation is unconstitutional as applied to the properties and that the proposed solid waste disposal facility constitutes a reasonable use of the property. Appellees also sought injunctive relief and damages. In response, the board of commissioners filed a motion for partial summary judgment. The parties subsequently agreed to bifurcate the proceeding, allowing the trial court first to determine appellees' requests for declaratory judgment. An agreed entry provided that a hearing on the remaining issues of injunctive relief and damages would be held at a later time, if needed. The motion for partial summary judgment was held in abeyance pending the trial court's decision on the request for declaratory judgment.

{¶ 6} A hearing was held on the matter, and in a decision issued November 13, 2001, the trial court granted appellee's request for declaratory judgment.

---

1. This zoning designation restricts property use to single-family dwellings having lots larger than three-fourths of an acre, schools, firehouses, hospitals, parking, and certain other religious, charitable, and institutional uses.

The trial court determined that the R1 zoning designation deprived Clarke and BFI of any economically viable use for the parcels of property, and declared that the classification was therefore unreasonable, arbitrary, and unconstitutional. The trial court further declared that a solid waste disposal facility would constitute a reasonable use of the property. The board of commissioners appeals, raising two assignments of error for our review.

### Assignment of Error No. 1

{¶ 7} "The trial court erred in failing to grant appellant's motion to dismiss pursuant to Ohio Rule of Civil Procedure 41(B)(2)."

### Assignment of Error No. 2

{¶ 8} "The trial court's judgment is against the manifest weight of the evidence."

{¶ 9} As an initial matter, appellees urge us to adopt the rule of law espoused in *Sylvania Sav. Bank Co. v. Sunburst Car Care Centers, Inc.* (1983), 12 Ohio App.3d 97, 100, 12 OBR 403, 467 N.E.2d 263, which prohibits a defendant from appealing the denial of a motion to dismiss made pursuant to Civ.R. 41(B)(2) if the defendant proceeds with its defense upon denial of the motion. The *Sylvania* decision has been criticized for its reliance on cases which predate the adoption of the Civil Rules as authority for its conclusion. See *Ohio Edison Co. v. Hwy. Carrier Corp.* (Jan. 21, 1994), Clark App. No. 3047, 1994 WL 12468. Further, the authority cited in *Sylvania* has been overruled by the Ohio Supreme Court, which found that the case applied an outdated waiver doctrine and was illogical. See *Helmick v. Republic–Franklin Ins. Co.* (1988), 39 Ohio St.3d 71, 529 N.E.2d 464, overruling *Halkias v. Wilkoff Co.* (1943), 141 Ohio St. 139, 25 O.O. 257, 47 N.E.2d 199. In similar cases, this court has not applied the waiver doctrine, see *Holiday Homes, Inc. v. Miami Twp. Bd. of Trustees* (Oct. 19, 1992), Clermont App. Nos. CA91–11–096 and CA91–01–097, 1992 WL 308307, and we decline to adopt such an ill-advised rule at this juncture.

{¶ 10} A motion for dismissal of a plaintiff's case under Civ.R. 41(B)(2) requires the trial court to weigh the evidence, resolve any conflicts therein, and render judgment for the defendant if the plaintiff has shown no right to relief. Civ.R. 41(B)(2); *Bank One, Dayton, N.A. v. Doughman* (1988), 59 Ohio App.3d 60, 63, 571 N.E.2d 442. The dismissal will be set aside only if erroneous as a matter of law or against the manifest weight of the evidence. Id.

{¶ 11} The board of commissioners' second assignment of error alleges that the trial court's judgment is against the manifest weight of the evidence. As we analyze both of the board of commissioners' assignments of error under identical standards of review, we will discuss the alleged errors concurrently.

{¶ 12}   At the request of the parties, the trial court considered only appellee's request for declaratory judgment.   Other issues, including whether injunctive relief would be appropriate, whether the zoning constituted a taking, and whether damages should be awarded, were bifurcated, and not considered by the trial court.   Accordingly, the only issues decided by the trial court were (1) whether "the Warren County zoning code is unconstitutional in so far as it restricts the subject parcels to R–1 uses[,]" and (2) whether "the S–D use would be an appropriate and reasonable permitted use for the subject parcels."   The trial court answered both queries in the affirmative, and ordered the board of commissioners to rezone the parcels to another appropriate use classification.

{¶ 13}   In reviewing the trial court's judgment, it is well established that every reasonable presumption must be made in favor of the judgment and findings of fact.   *Shemo v. Mayfield Hts.* (2000), 88 Ohio St.3d 7, 10, 722 N.E.2d 1018, citing *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273.   Thus, judgments supported by competent, credible evidence going to the material elements of the case will not be disturbed as being against the manifest weight of the evidence.   Id., citing *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, at syllabus.

{¶ 14}   We begin with the premise that all zoning ordinances are presumed constitutional.   Id., citing *Cent. Motors Corp. v. Pepper Pike* (1995), 73 Ohio St.3d 581, 583–584, 653 N.E.2d 639.   However, a zoning ordinance will be struck down if a property owner challenging the ordinance proves, beyond fair debate, that the ordinance is " 'clearly arbitrary and unreasonable and without substantial relation to the public health, safety, morals, or general welfare' " of the community.   *Goldberg Cos., Inc. v. Richmond Hts. City Council* (1998), 81 Ohio St.3d 207, 213, 690 N.E.2d 510, quoting *Euclid v. Ambler Realty Co.* (1926), 272 U.S. 365, 395, 47 S.Ct. 114, 71 L.Ed. 303.   The party challenging the constitutionality of a zoning classification bears the burden of proof and must prove unconstitutionality beyond fair debate.   *Goldberg* at paragraph two of the syllabus.   The standard of "beyond fair debate" in zoning litigation is analogous to the standard of "beyond a reasonable doubt" in criminal law.   *Cent. Motors. Corp.*, 73 Ohio St.3d at 584, 653 N.E.2d 639.

{¶ 15}   A landowner can challenge the constitutionality of a zoning ordinance in two ways.   First, a landowner can allege that a zoning ordinance is unconstitutional as applied to a particular parcel of land.   *Goldberg*, 81 Ohio St.3d at 213, 690 N.E.2d 510.   Second, a landowner may allege that a zoning ordinance as applied to property constitutes a "taking" in violation of the Fifth Amendment to the United States Constitution, entitling the owner to compensation.   Id. Appellees' complaint challenged the constitutionality of the properties' zoning

**20**

classification on both grounds. However, because the proceeding was bifurcated, the trial court did not consider appellees' allegation that the zoning constituted a taking requiring just compensation.

{¶ 16}  The board of commissioners argued that the zoning designation advances several legitimate governmental health, safety, and welfare concerns, including "protecting current and future residential development around the site from the noise, dust, odors, visual impact and track traffic that are inevitably associated with the operation of an open landfill." Based on the evidence presented, the trial court found that appellees proved beyond fair debate that the R1 zoning designation was arbitrary, unreasonable, and not substantially related to the public health, safety, morals, or general welfare of the community. We agree and find that the trial record is replete with evidence to support the trial court's findings.

{¶ 17}  In support of its position, the board of commissioners presented evidence of residential development in relatively close proximity to the proposed Big Foot II landfill, and evidence that the parcels are suitable for future residential development. Robert Craig, Warren County Board of Commissioners Director of Planning, developed and wrote the 1994 Union Township land-use plan. His deposition testimony notes that the property surrounding the subject parcels is predominantly zoned rural residential. While homes are sparsely scattered throughout the area, the closest residential development is approximately two miles away. Craig's opinion, based in large part on his 1994 assessment of the property at issue, was that the R1 zoning designation remained appropriate.

{¶ 18}  Caleb Faux, a land-use planner, also testified in favor of maintaining the R1 zoning. He opined that the subject parcels could be developed as residential property. He based this conclusion on his observation of development trends throughout the county. While he considered the capped Bigfoot I landfill a hindrance in the development process, he found that lots in this area "seem to be selling." He concluded that the area is becoming increasingly residential in nature, and that the R1 zoning designation is consistent with this use. Regarding the two subject parcels, Faux was of the opinion that both could be developed for residential use. While he found the BFI parcel to be less desirable than the Clarke parcel, he did not think it was completely inappropriate for residential use.

{¶ 19}  Notably, although there are residential properties in this general area, there are also properties devoted to mineral extraction, a gravel pit, the Bigfoot I landfill, and heavy industry, including a cement block manufacturing plant. Various witnesses testified that appellees' property is different from nearby residential properties and that its unique characteristics make it not suitable for

residential use. For instance, the BFI parcel is steeply sloped, with limited road access. This parcel has been stripped of its topsoil and is thus unsuitable for a septic system, necessary because the area is not serviced by public water or sewer service. It was estimated that it would cost $3 million to replace enough soil on this property to allow for the installation of a septic system. While the Clarke property is more suited for development, it too has limited public road access, and would require 900 feet of "dead street" before reaching a saleable lot. This lot is near the Bigfoot I landfill, making it less saleable for residential development. Affecting both properties is the fact that the county has numerous other; more saleable lots.

{¶ 20} Land-use expert Menelaos Triantafillou prepared a land-use analysis of the properties and testified at trial in favor of appellees' position that the R1 zoning classification does not substantially advance any legitimate government interest. Triantafillou found that the properties were not suited to any of the permitted R1 uses due to the properties' locations, physical features, inaccessibility, and impact of adjacent uses. Triantafillou concluded that an SD zoning designation would be an appropriate classification, consistent with the area's historic zoning and development.

{¶ 21} While the board of commissioners criticizes the trial court for basing its decision, in part, on the economic feasibility of developing the property, a property owner may attack a zoning regulation on constitutional grounds "if the permitted uses of the regulation are not economically feasible, or the regulation only permits uses which are highly improbable or practically impossible under the circumstances." *Holiday Homes, Inc. v. Miami Twp. Bd. of Trustees* (Oct. 19, 1992), Clermont App. Nos. CA91–11–096 and CA91–11–097, at 5–6, 1992 WL 308307, citing *Valley Auto Lease of Chagrin Falls, Inc. v. Auburn Twp. Bd. of Zoning Appeals* (1988), 38 Ohio St.3d 184, 527 N.E.2d 825. While the economic-feasibility analysis is directly related to the taking issue, not addressed by the trial court, it is also related to the constitutionality of the zoning designation at issue in the present case. Deprivation of an economically feasible use does not per se render a zoning unconstitutional, but under the present facts, where the R1 zoning essentially permits only residential development, and such development is not economically feasible, there is strong evidence that the R1 designation bears no substantial relationship to the purposes proffered by the board of commissioners. See *Nectow v. Cambridge* (1928), 277 U.S. 183, 187, 48 S.Ct. 447, 72 L.Ed. 842.

{¶ 22} While the government may restrict the use of property through zoning regulations, such restrictions cannot be imposed if they fail to bear a substantial relationship to the public health, safety, morals, or general welfare. *Euclid v. Ambler Realty Co.* at 395, 47 S.Ct. 114, 71 L.Ed. 303. The

express finding of the trial court, that the R1 zoning classification is not substantially related to the public health, safety, morals, or welfare, is supported by the record and determinative of this case. Evaluating evidence and assessing credibility are primarily for the trier of fact. *Ostendorf–Morris Co. v. Slyman* (1982), 6 Ohio App.3d 46, 47, 6 OBR 156, 452 N.E.2d 1343. The trial court was free to reject testimony that the permitted rural residence use substantially relates to the asserted governmental interest, in favor of the contradictory evidence presented at trial. See *Goldberg,* 88 Ohio St.3d at 12–13, 722 N.E.2d 1018.

{¶ 23} Accordingly, we are not convinced that the trial court erred in finding, beyond fair debate, that the R1 zoning classification is unconstitutional as applied to the subject property.

{¶ 24} Upon making the initial determination regarding the constitutionality of the zoning, the court properly proceeded to address whether the proposed solid waste landfill use was reasonable. Id. We again find that there was competent, credible evidence to support this conclusion. As previously shown, the property is unsuitable for residential use. The evidence presented shows that appellees' proposed use of the property to develop a solid waste disposal facility is reasonable.

{¶ 25} The board of commissioners further contends that it is prohibited from zoning the subject parcels SD because the properties lie within an aquifer overlay zone. Warren County Zoning Code 21.53(A)(8) provides that land to be zoned SD may not be in an "AP Aquifer Protection" area. However, since the code defines such areas by the boundaries of the parcels above the aquifer, rather than by the actual area of the aquifer, Section 5.71(B) allows an applicant to demonstrate that the site does not lie above an aquifer. Such an application is to be made to the Warren County Regional Planning Commission, not the board of commissioners. In the present case, the application was apparently submitted to the board of commissioners, which made no conclusion with regard to this issue. In spite of this, the trial court concluded that the board of commissioners' "fear that the subject parcels are located over a large underground aquifer and could therefore lead to water contamination proved to be unfounded."

{¶ 26} We observe that the trial court's conclusion in regard to this issue is of no practical effect. The determination whether the subject parcels lie over an aquifer protection zone is one to be made by the Warren County Regional Planning Commission, pursuant to Warren County Zoning regulations, and the Ohio Environmental Protection Agency, pursuant to R.C. Chapter 3734. Such a determination has, from the record before us, not been made. The trial court's statement does not obviate the need for BFI to seek approval from these

agencies before proceeding with its plans to develop a solid waste disposal facility.

{¶ 27}  Likewise, the board of commissioners' contention that it is prohibited from zoning the property SD, due to the site of the aquifer, is at this point in the proceeding misplaced.  There has been no appeal of the board of commissioners' decision denying appellees' request to rezone the properties. Rather, this appeal involves only the trial court's declaration that the R1 zoning classification, as applied to the subject properties, is unconstitutional.  A declaratory judgment action attacking the constitutionality of a zoning restriction is independent from the administrative proceedings and it is not a review of a final administrative order.  *Karches v. Cincinnati* (1988), 38 Ohio St.3d 12, 16, 526 N.E.2d 1350; *Driscoll v. Austintown Assoc.* (1975), 42 Ohio St.2d 263, 271, 71 O.O.2d 247, 328 N.E.2d 395.  The exclusive method of obtaining review of such an administrative determination is an R.C. Chapter 2506 appeal.  Id. While the board of commissioners has been ordered to rezone the properties to another classification that would permit a reasonable use, the decision denying the request to zone the parcels SD has not been reversed.  There is simply no requirement at this point that the board of commissioners zone the parcels SD.

{¶ 28}  Last, although the board of commissioners contends that the trial court erred by finding that the R1 zoning designation constituted a taking, as noted above, this finding was not made by the trial court.  We accordingly find this contention to be without merit.

{¶ 29}  Because the judgment of the trial court is supported by competent, credible evidence, the assignments of error are overruled.

Judgment affirmed.

HILDEBRANDT and WINKLER, JJ., concur.

LEE H. HILDEBRANDT JR., J., of the First Appellate District, sitting by assignment.

RALPH WINKLER, J., of the First Appellate District, sitting by assignment.